Thomas Keeney et al., Appellees, v. Jose Antonio Carillo et al., Appellants.

*January, 1883.*

WATER.   (1) *Appropriation, rights conferred by:*   (2) *Forfeiture of such rights by abandonment:*   (3) *Enforcement, by injunction of such rights.*
CHANCERY PLEADINGS.   (4) *Bill need not state evidence.*
SAME.   (5) *Sufficient allegation of diversion of water.*
WATER.   (6) *Right to subterranean stream.*
EVIDENCE.   (7) *Answer under oath, how overcome.*
PLEADINGS.   (8) *Misnomer of complainant.*

1.   Complainants built a house near two springs, at the mouth of a cañon, took possession of them, and by an acequia, conducted water from them to a farm.   Subsequently complainants dug ditches through a cienega, or marsh, several miles up the cañon, to drain the same, and collect and turn the water into the natural channel of the cañon below, wherein it continued to run upon the surface of the ground, about twenty cubic inches in volume, two or three miles to a place in the cañon, where it sank.   To prevent the sinking and wasting of the water at this place, complainants constructed a dam, and made a ditch, conducting the water by and beyond the place of sinking, and turning it again into the natural channel of the cañon, wherein it continued to run to within about two miles of the springs at the mouth of the cañon, where it again sank, and entirely disappeared from the surface.   Complainants' intention was to conduct the water by channels on the surface, natural and artificial, from the cienega to their lands in the plain below; but aside from having made the small acequia from the springs to such lands, they only prosecuted the work so far as to conduct the water to the place where it sank the second time, and then abandoned it for want of means and time. This was in 1876.

Keeney et al. v. Carillo et al.

The respondents in September, 1877, commenced work, and succeeded thereby in conducting water from the cienega to the mouth of the cañon upon the surface, and thence to their lands on the plain below. The effect of this work was to dry up the lower springs at the mouth of the cañon where complainants had received their water, and conducted it to their lands, and complainants applied for an injunction to restrain the diversion of their water.

*Held*, That the land of the cañon being public unoccupied land, of no value whatever, save as a natural water course, complainants had a right in good faith to commence the necessary work to conduct to and upon their lands all or any part of the water of the springs, stream or cienega, and that if they had continued their work with due diligence to final completion within a reasonable time, their right to the water actually appropriated, would be valid, and would relate back to the time of commencing work, but that complainants had failed to prosecute the necessary work with due diligence, and that in consequence they had failed in appropriating *all* the water of the cienega.

2   That not having time and means requisite to a completion of the work within a reasonable time, would be no excuse; and a discontinuance on that ground for an unreasonable time would work the forfeiture of any right that might have been acquired and retained by due diligence in completing the work.

3.  But that complainants had acquired a right by prior appropriation and use of the water flowing from the lower springs; that this amount was cut off by respondents' works, which took all the water from the cienega, and diverted the supply that otherwise would have reached complainants' springs; hence they were decreed one-fourth of the entire quantity of water.

4.  Evidence need not be set forth in a bill of complaint.

5   Allegations in bill held sufficient to charge diversion of water by cutting off percolating water.

6.  A well-defined and constant subterranean stream is protected to the owner as much as though it ran in a natural channel on the surface.

7.  An answer under oath may be overcome by the testimony of one witness, corroborated by other facts and circumstances in the case.

8.  One of the complainants was described in the bill as James Aguallo, but in the other papers and proceedings, was called José Maria Aguallo. This variance appeared to be the result of a clerical error. It was not objected in the court below, and was not prejudicial to defendants. *Held*, Immaterial.

31

Appeal from the District Court for Doña Ana county.

This suit is brought by Thomas Keeney, James Hill, Humphrey Hill and James Aguallo, complainants and appellees, against José Antonio Carillo, Juan Lopez, Sebero Bargas and Francisco Maes, respondents and appellants, to enjoin the respondents from directing and using any of the water from cienegas and springs in the Alamo cañon in Doña Ana county, and from in anywise interfering with ditch of complainants there situate. Complainants' bill is sworn to, and requires answer under oath. Respondents answer under oath, and deny having interfered with complainants' ditches or water. Both parties claim the water flowing in said cañon above certain springs at the mouth of the cañon. Respondents make no claim to water of the springs last named, nor to ditches leading down from them. The proofs show that said cañon is from seven to fifteen miles long, and at head of cañon is a marsh, or cienega.

At the mouth of said cañon are two springs. A map, showing approximately the matters referred to in evidence, is herewith attached.

In October, 1876, complainants, with one Eugene A. Dow, went up into the said cañon, and did some work at cienega C, and in the cañon down to point D; also at elbow at flume, and at the springs at mouth A A, in all six days' work of five men, including a day occupied in going up and coming back from cienega, that is in all, thirty days' work. Work had been previously done at points named. Complainants built a house at mouth of cañon A, and dug ditch from springs A A to their lands below at E. But little water flowed from these lower springs, not enough to irrigate lands with. It is not shown that the work above increased the flow of water from springs at A A. Complainants failed to get water to flow further down cañon than to point at D, when it sank.

Complainants did no more work in cañon, abandoned the

MARSH.

Falls.

Channel of Canon.

Ditch and dam of complainants, alleged.
Ditch and dam of respondents, alleged.

B

2 or 3 miles.

Flume.

D

Respondents' Ditch.

Flume.

Mouth of Canon.

Spring.

A

Flume.

A

Big Spring.

Complainants' Ditch.

House.

Respondents' Ditch.

2½ or 3 miles.

Respondents' Lands.

Complainants' Lands.

[483]

enterprise and left the canon.    Complainants show that it
would have required only an expenditure of fifty or a hun-
dred dollars to have conducted the water out of the cañon.
None of the water in the cañon above springs at A A
was ever appropriated by complainants to any useful pur-
pose, and but slight evidence of an appropriation of water
of springs at A A, and if it was appropriated, it seems
to have been abandoned about a year afterwards, in 1877.
Respondents and associates went to cañon, took up lands out
from mouth of cañon, and went to work to appropriate
water.    They opened ditch in March, built dam and made a
ditch at D, and thence conducted water by means of ditch
and flumes out of cañon and into their lands at F.    The
dotted line represents the ditch.    Respondents made no
claim to nor interfered with springs and ditches at mouth
of cañon, claimed by complainants.    These ditches and
springs are below respondents' ditches, and water from them
cannot flow into respondents' ditch.    Respondents, from
eight to eighteen in number, worked constantly from one to
two months at construction of their ditch, about forty days.
They appropriated the water irrigating their lands below.
When respondents were about getting their ditch in cañon
completed, complainants appeared and claimed water in the
cañon as their property.    Afterwards, when respondents had
completed work and appropriated water of cañon, com-
plainants came back to the mouth of the cañon and claimed
the water.    This suit was not instituted until December,
1878, but in the summer previous, by an agreement between
parties, complainants had use of respondents' ditch to get
water to lands for a time, which was not to prejudice either
party's rights to premises.    During the time they (com-
plainants) were thus getting water from respondents' ditch,
complainants built a cabin or two on their lands, and did one
planting.    The complainants, up to time of commencement

Keeney et al. v. Carillo et al.

of this suit, did not attempt to build a ditch in cañon from D to mouth of cañon.

*W. L. Rynerson and T. B. Catron*, for appellants:

The judge who heard the cause found that the complainants only are entitled to the water of the springs at mouth of cañon, and that the respondents, by constructing their ditch and diverting the water of the cienega, decrease the water of the springs at mouth of cañon. This question was not presented by complainants' bill, and the witness Dow, who gave the only testimony on this point, shows by his own testimony that the assumption that the springs last named are supplied by the water of the cienega at head of cañon is not sustained.

In referring to complainants, it is to be understood that complainant, James Aguallo, has established no right whatever, and that one José Maria Aguallo, not named in complainants' bill, was an equal partner in all that the other complainants acquired, or attempted to acquire. It is apparent that there is a misjoinder of parties plaintiff, which is fatal to complainants' bill.

As to the effect of constructing respondents' ditch upon springs at mouth of cañon, there being only one witness testifying on that point, and answer of respondents having been made on oath, his oath cannot prevail against averment in answer: See Grisley's Equity Evidence, p. 227.

Evidence only opinion, and therefore will not warrant injunction: See Hilliard on Injunction, par. 23, p. 19, etc.

To warrant injunction, clear and certain rights and full disclosure of facts must appear. Complainants should have set up in their bill facts touching diverting water by cutting off percolating water: See Hilliard on Injunction, par. 18, p. 16, and authorities there cited.

Complainants cannot enjoin use of percolating waters: Angell on Water Courses, pp. 152, 173 and 176.

Allegations and proofs must correspond to : U. S. Digest, 390, § 6155 ; 21 Ill., 17.

Allegations denied by answer must be proven by two witnesses, or one and corroborating circumstances : *Id.*, 6163 ; 7 Blackford, 162 ; 10 Foster, 500–509.

*S. B. Newcomb*, for appellees :

The appellants assume, in the statement of their case, both as to the facts and the law applicable thereto, that they had a clear legal right to appropriate the water in the Alamo cañon, and that their going into said cañon and doing the work they did in no way trespassed upon or interfered with the prior rights of complainants. Upon no other hypothesis could they claim to have any legal or equitable standing in a court of equity. If their going there was a trespass upon, or an interference in any way with, the prior rights of · complainants, then they do not come into this court with clean hands ; they cannot invoke the aid of this court to perpetuate that wrong. He who seeks equity must do equity.

Now, we say that the defendants had no business in that cañon in the first place. They were trespassers from the beginning ; they knew before they went there that the complainants had been in possession of this cañon, including the cienegas and springs at its head for a long time previous. They knew that complainants had taken up, or were occupying, land below the mouth of said cañon ; that they (complainants) had had their stock there ; had built a house at the mouth of the cañon, had lived there, were striving to make a home for themselves and their families ; they knew that the complainants had done work in and at the head of the cañon. They also knew perfectly well, as every one in the country knew, that the lower springs derived their supply of water from the marshes and springs above ; they were well aware that if they succeeded in carrying the water out of the cañon above the lower springs, that those springs would dry up (as they did), and the complainants would be

literally " starved out;" would be compelled to leave their lands and homes; be obliged to take away their stock and abandon all the property they had acquired and the work they had done. This is what defendants intended to do when they went there, and that is what they will succeed in doing should this court sustain their view of this case. They did not want these complainants there ; they intended to force. them to leave.

We contend that complainants had possession of not only the mouth of the cañon and the grounds below, but of the cañon itself, up to its very head, long before the defendants went there at all. The bill alleges, and the answer admits, that said cañon is a narrow, rugged gorge in the mountains; the evidence shows that it is even impossible to pass all the way up through this cañon to its head. It was absolutely impossible for complainants to fence in this cañon. They could under no circumstances take exclusive possession of it any further than they did, that was by building a house at its mouth, and they also built a small house up at the cienega ; they dug ditches through the cienega, and also at different places in the cañon. They, or some of them, lived at the mouth of the cañon, not all the time, it is true, they were absent occasionally, but they kept their cattle there, and farmed lands in the vicinity. This, we contend, was taking actual continual possession of the cañon ; they could do no more under the peculiar formation of the country, and it was sufficient actual possession as against mere trespassers, such as these defendants. These defendants knew, when they first went there, that complainants claimed possession of this cañon. Their own witness, Sylvanio Gabaldovia, who was one of the party who worked for and with the defendants, says, " We had heard, before we went there, that plaintiffs were in possession of mouth of cañon ; we had· heard that the Hills were living in the house at the mouth of the cañon." Again, their own witness admits that Hum-

phrey Hill served a notice on them not to work, or in any way interfere with this cañon, and that the complainants claimed the possession and ownership of the same. . One witness testifies that he stopped work as soon as this notice was served, he having some sense of right and justice, acknowledged complainants' claim, and abandoned the enterprise. The complainants' possession was good as against all the world, save the United States Government.

It is abundantly evident from the evidence, that the lower springs are fed from the cienega and upper springs; all the facts and circumstances indicate this beyond a doubt. This fact can only be shown by the circumstances and the opinion of men who are acquainted with the cañon and springs; why it was that every party who undertook to settle there, and utilize the water at this place, went up to the cienega to make ditches and clean out the springs up there, the first thing they did. The party who went there some eleven years before this suit was commenced, went up there to work to increase the flow of water. Alexander Hill, some years later, did the same thing. These plaintiffs did the same, and so did the defendants; all parties had to do this, and why? simply because the lower springs furnished no water save what came from above. How did it happen that as soon as defendants cut off the water above one of the lower springs dried up entirely, and the other nearly so? Can there be a doubt about this? None in the least; and this is why complainants took possession of the whole cañon and claimed it as theirs. There was no land in the cañon that could be utilized or used; the water was all there was on it, and the springs at the mouth and the land below were of no use to any one without the springs and water above.

We further contend, that the complainants had not lost their right of prior possession and appropriation of this upper water, that under the circumstances of the place and country, one year, or two years, would not be too long for

them to be engaged in bringing down this water. It is a barren, desolate country, at times very dangerous, on account of Indians. The complainants were poor men, struggling hard for a living; they were doing all they could to complete this work; they had to go slow, stop occasionally for want of time and means, but they did not give up their possession; they still held on to their lands and houses and water, and they should be protected in their rights. These defendants had no business there; they were trespassers, and cannot claim any right to the water in question, in equity.

Defendants claim that because their answer is sworn to, therefore we must contradict in every instance by more than one witness; when we examine this answer, and see what they have sworn to, we think the court will have little difficulty in disposing of this matter. Defendants swear that complainants never did any work up the cañon, nor built any house at the cienega, and now they admit, in the statement of facts, that complainants did do thirty days' work up in the cañon; and the evidence shows conclusively that they did a large amount of work up there, and that they did build a house at the cienega. So much for this very truthful answer. The point that James Aguallo is made plaintiff, instead of José M. Aguallo, is taken a little too late in the day to be available; at most it is a mere clerical error, and can be amended.

The defendants admit plaintiffs' right to the lower springs, and in this admission they give away their case.

It is a well-settled law, that the owner of a spring has a perfect right to it against all the world, except those through whose land it comes. Strangers cannot take it away or destroy it, even though it be derived from lands which do not belong to the owner of the spring. See Angell on Water Courses, p. 182, also 153, *Id.*, 99, 150.

The question of fact whether the lower springs are supplied with water from this upper, has been decided by the

chancellor in the case in the affirmative, and being a question of fact its decision by the judge has the same force as if decided by a jury, and this court will not disturb the finding.

BELL, Associate Justice: The judgment entered in the .court below decreed that the appellants herein (respondents in the court below), are entitled to the exclusive use of three-fourths of the water running in their acequia at the mouth of Alamo canon, mentioned in the bill. It further decrees that the appellants " are entitled to one-fourth of the water running in said acequia."

The decree then provides the manner of dividing the water in these proportions between the respective parties, and maintaining the ditches in good order.

It closes with a restraining order enjoining " either party from in any manner interfering with, or preventing or obstructing the free and exclusive use by the other party, or either of them, of that proportion of said water which such party is hereby decreed to be entitled to."

Each party is required to pay his own costs.

From an examination of the evidence taken before the master we think the facts are fairly set forth in the opinion of the court below, which is as follows:

| THOMAS KEENEY ET AL. v. JOSÉ ALBINO CARILLO ET AL. | District Court, County of Doña Ana—In Chancery. |
|---|---|

This suit was brought to enjoin the respondents from using or obstructing the use by the complainants of the water flowing from the mouth of the Alamo cañon, situated in Doña Ana county.

Both complainants and respondents claim the water on the ground of prior possession and appropriation, for the purpose of irrigating lands.

From the testimony taken and reported by the master it

seems that the complainants first attempted to appropriate the water in question, and to some extent succeeded, in the year 1876.

It is evident, however, that all the water actually appropriated by the complainants was taken from certain two springs at or near the mouth of the cañon.

Several miles up the cañon is situated a cienega, or marsh. In 1876 the complainants dug ditches in and through this cienega to drain the same and collect and turn the water into the natural channel of the cañon below, wherein it continued to run upon the surface of the ground, about twenty cubic inches in volume, two or three miles to a place in the cañon where it sank.

To prevent the sinking and wasting the water at the latter place, the complainants constructed a dam and made a ditch, conducting the water by and beyond the place of sinking and turning it again into the natural channel of the cañon, wherein it continued to run to within about two miles of the said springs at the mouth of the cañon, where it again sank and entirely disappeared from the surface.

The complainants commenced the work above mentioned, and prosecuted it to the extent specified, with the intention of conducting the water from the cienega at the head of the cañon by channels on the surface, partly natural and in part artificial, to their lands on the plain below.

But, aside from having made a small acequia from the springs to their lands to be irrigated, they only prosecuted the work so far as to conduct the water to the place where it sank the second time. This was in 1876.

There is nothing in the testimony showing, or tending to show, any intention since that time on the part of the complainants to resume and complete the work. In the language of one of their witnesses, the work was then discontinued for want of means and time.

The question now is, how much water had the complain ants, up to this time, appropriated to some useful purpose?

The respondents ˙the year following, 1877, in September, commenced work, and succeeded thereby in conducting water from the cienega to the mouth of the cañon upon the surface, and thence to their lands on the plain below.

The effect of this work was to dry up the lower springs at the mouth of the cañon, where the complainants had received their water, and conducted ˙it by an acequia to their lands.    That these lower springs were fed by the water com- ing from the cienega above is quite evident.

But if the water from the cienega flowed under ground for any considerable distance before reaching the lower springs, it is evident that a large amount, which, percolating through the ˙ground beneath the surface, would be absorbed, and never make its appearance at the springs.

It is also very probable that the work of the complainants in conducting the water on the surface to the place where it sank the second time would to some extent increase the flow of water from the lower springs, but what this increase was does not satisfactorily appear from the evidence.

In fact, the testimony on both sides as to the amount of water appropriated by either complainants or respondents is so very loose and indefinite, that it is quite impossible to come to any very satisfactory conclusion as to the equity of the case on that point.    My impression from the testimony, however, is that the complainants had acquired a right by prior appropriation and use of the water flowing from the lower springs; that this amount, whatever it was, was cut off by the respondents' acequia, which took all the water from the cienega and diverted the supply that otherwise would have reached their springs.

That the labor performed by the respondents in conduct- ing the water to the mouth of the cañon was, perhaps, more than four times as much as that performed by complainants,

and was more than four times as effective for the purpose; and that the water flowing from the mouth of the cañon, in the respondents' acequia, was at least four times as much as that previously flowing from the springs, and appropriated by the complainants.

The respondents, of course, in any event had the right by their labor to increase the flow of water from the mouth of the canon, over and above that actually appropriated by complainants from the springs and acequia, the right and title to such increase.

The complainants seem to place great reliance upon the fact that they were before the respondents in *commencing* work for the appropriation of this water; that they had built a house in the cañon and taken possession of the *land* at its mouth, etc.

It is true that a party may in good faith commence the necessary work to conduct to and upon his lands all, or any part of the water of a spring, stream or cienega, and continue the work with due diligence to final completion within a reasonable time, and in that case his right to the water actually appropriated by him will relate back to the time of his commencing work, and, in the meantime, and before the expiration of what would be a reasonable time, under the circumstances, he would be protected in what he could show that he intended to appropriate by his works as against any trespasser : *Weaver v. Eureka Lake Co.*, 15 Cal., 271 ; *Kimbal v. Gearhart*, 12 Cal., 28.

Not having the time and means requisite to a completion of the work within a reasonable time, would be no excuse, and a discontinuance on that ground for an unreasonable time would work the forfeiture of any right that might have been acquired and retained by due diligence in completing the work: *Kimbal v. Gearhart*, 12 Cal., 28.

In the case under consideration, the complainants, though they may have commenced work in 1876, with the intention

of saving and appropriating all the water that could be made to flow from the cienega to the mouth of the cañon, have failed to prosecute the necessary work therefor with due diligence to completion within a reasonable time, and, in consequence, have failed in appropriating all of such water. And in my opinion they are, under the circumstances, entitled to no more than a fourth of the water running in the respondents' acequia.

For these reasons I have concluded to grant the decree rendered this day in this suit. Dated this, the 29th day of June, A. D. 1880.

WARREN BRISTOL,
*District Judge Third District N. M.*

From the decree based upon this opinion, and which has been recited above, this appeal has been taken. It is objected that complainants should have set up in their bill facts touching diverting water—by cutting off percolating water—that failing to do so, they are not entitled to the relief given to them by the decree.

The rule is well settled, that it is not necessary to plead the evidence in a bill of complaint, and we are of opinion that the bill in this case sufficiently sets up a division of the water by which the springs are now supplied through a subterranean passage.

The bill charges that after the plaintiffs, at great labor and expense, had opened said springs and cienega, and after they constructed ditches, dams and acequias, to conduct and lead said water on to their lands, and after they, by the means set forth, acquired an exclusive right to the use of the said water for irrigation purposes, and while they were in actual and peaceable possession of said lands and of the cienega and springs, and of the water flowing from said cienega and springs, and the use thereof, that the defendants did forcibly and violently, and without the consent, and against the will

of the plaintiffs, take said water and appropriate it to their own use.

The complaint further charges that the defendants have already diverted and are still diverting all of the said water from the ditches and acequias of the complainants into other acequias and ditches, by means whereof the flow of water in the ditches and acequias constructed by the complainants, has entirely ceased. Under these allegations, we are of opinion that evidence was admissible, showing that the waters which flowed from the springs, at the mouth of the cañon, into one of the acequias of the complainants, ceased to flow, after the diversion of the waters by the defendants from the ditch built by the complainants, in the upper part of the cañon.

The court below finds that to be the fact, and the pleadings and evidence justify the finding. The channel of the water was for part of the distance subterranean, but a well-defined and constant stream in a subterranean channel is protected to the owner as much as though it ran through a natural channel on the surface: *Taylor v. Welch*, 6 Oregon, 198. We think the evidence in this case shows that the water flowing from the springs at the mouth of the cañon was furnished through as well-defined a subterranean channel as it would ordinarily be practicable to describe.

The evidence shows that the waters flowing from the complainants' ditch in the upper part of the cañon disappeared at a certain point in the natural gulch, and that it again came to the surface regularly and constantly at the springs at the mouth of the cañon.

It was not a case of percolating water within the meaning of the law ; the natural conformation of the soil made it quite certain that the water flowed in the direction of the springs, and the fact that the water ceased to flow from them after the defendants had diverted the water from the ditch of complainants in the upper part of the cañon, is almost

conclusive evidence that the water of the springs was furnished from the complainants' said ditch.

. It is also to be noted that this is not the case of an adjoining owner diverting percolating water in his own soil from flowing into his neighbor's land. Here the land of the cañon was public unoccupied land, of no value whatever, except as a natural water-course; the complainants went on it, did work by which their supply of water was increased to them; they were in the actual use and enjoyment of that water; that the defendants then came, and without any right whatever, went into the cañon and dug ditches, which entirely cut off the supply of water which the complainants had theretofore enjoyed.

Surely these facts warrant the interference of a court of equity.

The court below held that under 'the circumstances the complainants were entitled to the continued use and enjoyment of at least so much of the water flowing through the said canon, as they had previously enjoyed.

In that view we concur.

We think the law is clear on the subject: "A subterranean stream which supplies a spring with water, cannot be diverted by the proprietor above, for the mere purpose of appropriating the water to his own use:" *Smith v. Adams*, 6 Paige, 435; Angell on Water Courses, sec. 112A. In this case there is no pretence of ownership by the defendants of the lands above the complainants. The law in regard to percolations is different, *ex necessitate rei*, for they "spread themselves in every direction through the earth, and it is impossible to avoid disturbing them without relinquishing the necessary enjoyment of the land:" Angell on Water Courses, *supra*. It is alleged by the appellants that the answer being under oath, it must be overcome by the evidence of more than one witness, and that as to the effect. of constructing appellants' ditch upon the springs at the mouth of the cañon, but

one witness was examined. Entertaining the views already expressed, we think that the evidence of the witness on that point was sufficiently corroborated by the other facts and circumstances in the case.

It is objected that the court erred in finding a decree in favor of James Aguallo.

From an examination of the record, it would appear that though one of the complainants in the bill is described as James Aguallo, in the other papers and proceedings he is called José Maria Aguallo.

It would appear to have been a clerical error in thus describing him by different Christian names, but as the defendants are not in any way prejudiced by it, we deem it of little importance. The question was not raised in the court below, and we will not further consider it here.

We find no error in the record presented.

The judgment should be affirmed.

All concur.