362 P.2d 998

**STATE of New Mexico ex rel. S. E. REYNOLDS, State Engineer, and Pecos Valley Artesian Conservancy District, Plaintiffs-Appellees,**

v.

**Elliott MENDENHALL and Ruth Mendenhall, Defendants-Appellants.**

No. 6768.

Supreme Court of New Mexico.

June 26, 1961.

Carpenter & Phelps, Roswell, for appellants.

Hilton A. Dickson, Jr., Atty. Gen., Charles D. Harris, J. Lee Cathey, Sp. Asst. Attys. Gen., John F. Russell, Roswell, for appellee.

Seth, Montgomery, Federici & Andrews, Santa Fe, C. R. Brice, James M. H. Cullender, Roswell, Neal, Neumann, Neal & Fort, Carlsbad, amici curiae.

MOISE, Justice.

Does a landowner who lawfully initiates the development of an underground water right and carries the same to completion with reasonable diligence acquire a water right with a priority date as of the beginning of his work, notwithstanding the fact that the lands involved were put into a declared artesian basin before work was completed and the water put to beneficial use on the ground? This is the only question presented in this appeal.

The lands owned by appellants were in close proximity to, but outside the Roswell Artesian Basin, which was declared as such by the State Engineer in the year 1931. The basin was extended to include the lands of appellants by order of the State Engineer effective February 6, 1950.

In April or May, 1949, appellants' predecessors in title commenced drilling for the development of water for irrigation and continued until it was believed an adequate supply had been reached. Upon testing, however, it was ascertained that the water was insufficient, whereupon it was determined to continue the efforts at development of the hole as an economically feasible irrigation well. In October, 1949, an oral contract for the further drilling of the well was entered into, and this contract was reduced to writing in December, 1949. The contractor commenced operations as soon as possible which was about February 6, 1950, the date of the order declaring the lands to be within the basin. The efforts of the contractor were successful and an adequate water supply was developed which was utilized to irrigate 248.49 acres during the crop year 1950, and has been used each year since.

Based on the foregoing facts the Special Master appointed to hear the evidence concluded that appellants had a good and valid water right to irrigate the 248.49 acres from artesian ground water with a priority date of May 31, 1949. The court adopted the same facts as found by the Special Master except as to one immaterial date. However, the district court differing with the Special Master concluded that in order for appellants' water right to be valid it must have been applied to beneficial use on the land before February 6, 1950, the date the basin was extended by declaration of the State Engineer to include appellants' lands and since the water was not applied on the land until later appellants had no water right. This appeal followed.

Prior to 1927 we had no statutory underground water (sometimes referred to as ground water) law. In that year Chapter 182, N.M.S.L.1927 was passed. In Yeo v. Tweedy, 34 N.M. 611, 286 P. 970, this law was held unconstitutional because of certain defects of form. However, among other things, the court in that case stated that the act was merely declaratory of the then existing law insofar as it provided that artesian waters were subject to the prior

appropriation doctrine, and accordingly neither took away nor created any rights.

In 1931 the legislature adopted Chapter 131, N.M.S.L.1931, (§§ 75–11–1 to 75–11–10, incl., N.M.S.A.1953) which was generally the same as the 1927 law, however with the defects therein which resulted in its being declared unconstitutional corrected. The material parts of that law which we consider in connection with this controversy are:

"The water of underground streams, channels, artesian basins, reservoirs, or lakes, having reasonably ascertainable boundaries, are hereby declared to be public waters and to belong to the public and to be subject to appropriation for beneficial use * * *." § 75–11–1, N.M.S.A.1953 Comp.

"Beneficial use is the basis, the measure and the limit to the right to the use of the waters described in this act [75–11–1 to 75–11–10]." § 75–11–2, N.M.S.A.1953.

"Existing water rights based upon application to beneficial use are hereby recognized. Nothing herein contained is intended to impair the same or to disturb the priorities thereof." § 75–11–4, N.M.S.A.1953.

In State ex rel. Bliss v. Dority, 55 N.M. 12, 225 P.2d 1007, the 1931 law was held to be constitutional. Also, that case lays to rest any question as to whether or not the prior appropriation doctrine applies to waters in artesian basins. That it has been applicable at all times is made amply clear subject, however, since 1931 to compliance with the statutory methods for acquiring rights in declared basins, where compliance with the requirements of the statutes is declared to be mandatory.

By Sec. 2 of Chapter 43, N.M.S.L.1935 (§ 75–12–2, N.M.S.A.1953) it is provided: "All artesian waters which have been declared to be public waters shall be under the supervision and control of the state engineer * * *." By this section the legislature provided for control of waters in artesian basins having reasonably ascertainable boundaries and which were declared to be public waters in § 75–11–1, N.M.S.A. 1953, quoted above. In State ex rel. Bliss v. Dority, supra, we stated that before the jurisdiction of the State Engineer attaches he must make a finding that the basin has reasonable ascertainable boundaries. From this it follows that absent such a finding the waters were not under the control or supervision of the State Engineer.

By Chapter 178, N.M.S.L.1949 (§§ 75–11–13 to 75–11–18, incl., N.M.S.A.1953) provision was made for the regulation of the drilling of wells in declared underground basins. In 1953 by Chapter 64, N.M.S.L. 1953 (§§ 75–11–19 to 75–11–22, incl., N.M. S.A.1953) *all* underground waters were declared to be public waters subject to appropriation for beneficial use. Existing

rights were recognized. This act prohibited transporting waters withdrawn from the underground outside the state (§ 75–11–20), provided for its enforcement (§ 75–11–22) and contained a provision specifically stating that "No permit and license to appropriate underground waters shall be required except in basins declared by the state engineer to have reasonably ascertainable boundaries." § 75–11–21.

Finally, by Chapter 251, N.M.S.L. 1959 (§§ 75–11–26 to 75–11–36, incl., N.M.S.A. 1953, Pocket Supp.) the legislature for the first time prescribed the procedure to be followed when the declaration of a basin intervened after a well had been drilled proving existence of underground waters but before the same had been placed to beneficial use on the land and provided for relation back for the priority date for such a well. This is the first occasion when statutory recognition was given to the doctrine of relation in the appropriation of underground waters.

Of course, the issue here involving a well drilled in 1949 and 1950, the statutes passed subsequently did not affect the rights here being determined. However, they do clearly indicate a legislative recognition that the statutory law as it existed at the time, in no way controlled or interfered with appellants' right to undertake development and to complete the appropriation under the general law. See Pecos Valley Artesian Conservancy Dist. v. Peters, 50 N.M. 165, 173 P.2d 490.

Accordingly, we examine the question of whether the doctrine of relation applies so as to protect appellants in any rights which they had initiated but which had not fully vested because of the intervention of the order extending the basin to include their lands. Long in his Treatise on the Law of Irrigation (2d Ed.) 126, describes the doctrine in these words:

"The rights of an appropriator of water do not become absolute until the appropriation is completed by the actual application of the water to the use designed; but where he had pursued the work of appropriation with due diligence, and brought it to completion within a reasonable time, as against other appropriators, his rights will relate back to the time of the commencement of the work * * *."

The doctrine was recognized in New Mexico as early as 1883 in a case involving waters of a spring, stream or cienega, in the case of Keeney v. Carillo, 2 N.M. 480.

In Millheiser v. Long, 10 N.M. 99, 61 P. 111, this court again recognized the doctrine in holding that a valid appropriation was accomplished when, after an intention had been formed, notice of such intent given, and the works constructed, water was diverted and put to beneficial use within a reasonable time.

The following is the language of this court in the case of Rio Puerco Irrigation Company v. Jastro, 19 N.M. 149, 141 P. 874, 876:

"The doctrine of relation has been universally applied by the courts, in arid states, in the appropriation of water. Where notice is required by statute of the intention to appropriate, the right relates back to the time such notice is given, in the authorized manner; in the absence of a statute, requiring notice, or other act, the right relates back to the time when the first step was taken. This doctrine does not apply, or protect the intending appropriator, however, unless he prosecutes his work of diversion with reasonable diligence * * *."

The doctrine was again referred to in Harkey v. Smith, 31 N.M. 521, 247 P. 550, a case involving surface water. See also Farmers' Development Co. v. Rayado Land & Irrigation Co., 28 N.M. 357, 213 P. 202, and Carlsbad Irr. Dist. v. Ford, 46 N.M. 335, 128 P.2d 1047.

The case of Farmers' Development Co. v. Rayado Land & Irrigation Co., supra, is a most interesting and instructive decision covering a situation involving the intervention of our irrigation act of 1907 covering surface waters after initiation of a water right but before its final application to beneficial use. There the court determined that even though the law of 1905 was in effect when the work was first initiated, that law was permissive and water could also be appropriated under the general law, and accordingly failure to conform to the requirements of the 1905 statute did not affect the right. Also, it was determined that the fact certain steps were taken under the 1907 law did not amount to an appropriation thereunder, and then concluded that since the 1907 law in § 2 (§ 75–1–2, N.M.S.A.1953) and § 59 (§ 75–8–1, N.M.S.A.1953) recognized the doctrine of relation and preserved rights and priorities where construction had been commenced under the general law before the 1907 law became effective, upon diligently prosecuting the development to completion, a priority date as of the time the claim was initiated should be recognized.

The fact situation was comparable with that here present. In May, 1949, when work was commenced to deepen the well the only law applicable was the general law of appropriation. While work was progressing the ground water law (§§ 75–11–1 to 75–11–10, incl., N.M.S.A.1953) was made applicable by the State Engineer's action in declaring the land to be within the Roswell Artesian Basin. There would be no question that under the authority of Farmers' Development Co. v. Rayado Land & Irrigation Co., supra, appellants would acquire a good and valid water right upon diligent completion of

their works and application of the water to beneficial use on the land if our ground water law contained provisions similar to §§ 75–1–2 and 75–8–1, N.M.S.A.1953, applicable to surface water.

An examination of our ground water law discloses that it does not contain a section comparable to § 75–1–2 which incorporated the doctrine of relation into the statutory law affecting surface waters. However, as already noted, inclusion of this provision in the statute was only a recognition of rights initiated under the existent law of appropriation. The general law of appropriation applied equally to surface and ground water. Yeo v. Tweedy, supra; Pecos Valley Artesian Conservancy Dist. v. Peters, supra. As stated in the latter case, ground water in its use, appropriation and administration is affected with all the incidents of surface waters, except for differences necessarily resulting from the fact that it is found below the surface.

If a section such as § 75–1–2 had been included in the 1931 underground water law we would not be faced with the present problem. However, we are convinced that its omission does not require a different result than would have followed if the legislature had incorporated the same provision. First we note that the 1907 surface water law being applied in Farmers' Development Co. v. Rayado Land & Irrigation Co., supra, had a materially different impact than did the underground water law

of 1931. Upon becoming effective, the 1907 law was immediately applicable to all surface water. On the other hand, the 1931 law upon becoming effective was not self-executing and did not alter any rights. The changed condition resulted from exercise of the authority expressed therein and the declaration of a basin by the State Engineer. Accordingly, the right to continue to develop underground water under the general law was in no way altered pending a declaration. This might follow shortly as was true of the Roswell Artesian Basin declared in 1931, or many years later as in the case of the extension declared in 1950 which included appellants' land.

We now turn to a consideration of § 75–11–4, quoted supra. Although much briefer and to the point than § 75–8–1, a careful reading of the section convinces us that the substance and intent of the two sections are the same. They both start with a recognition of existing rights. § 75–11–4 is not limited to a recognition of rights to water which had previously been put to beneficial use. It recognizes rights *"based upon* application to beneficial use." What was intended by the use of this language? It must be our purpose in construing the statute to give effect to the intent of the legislature as expressed by it. State v. Aragon, 55 N.M. 423, 234 P.2d 358; Reese v. Dempsey, 48 N.M. 417, 152 P.2d 157. We should also construe

the statute in the most beneficial manner permitted by the language in order "to prevent absurdity, hardships or injustice, to favor public convenience, and to oppose all prejudice to public interest." Scott v. United States, 54 N.M. 34, 213 P.2d 216, 219.

It is evident that the use of the term "beneficial use" was dictated by the presence of the same words in a preceding section (§ 75–11–2) where it is provided that "beneficial use is * * * the measure and the limit to the right to the use of the waters * * *" covered by the act. We are clear that when the legislature used the term "based upon" it had in mind the entire procedure necessary to accomplish a beneficial use of water. It is ofttimes a long drawn out enterprise that must be accomplished between initiation of a right and the final act of irrigating a quantity of land. Months and years may reasonably elapse. A four year span is recognized under certain circumstances in § 75–11–31, N.M.S.A.1953. To conclude otherwise would possibly result in years of effort and many dollars being lost by one who commenced an appropriation and had drilled a well, installed his equipment, dug his ditches and leveled his land, when on the day before he was to turn water onto the land the basin was declared by the State Engineer.

We do not believe the legislature intended any such absurd, unjust, or unfair result, nor would it be in the public interest. Likewise, it is not required by the language chosen by the legislature. They did not say that a right in process of ripening into a completed appropriation was not to be recognized. They merely stated that "existing * * * rights based upon application to beneficial use" were "recognized" and the provisions of the statute were not intended to "impair" or "disturb the priorities thereof." That priorities are preserved and not disturbed nor existing rights in any way adversely affected by our interpretation of the statute is amply clear. Our conclusion in no way detracts from any of the rights specifically mentioned in § 75–11–4, and does nothing more than to permit appropriations, legal when undertaken, to ripen into valid rights. By this interpretation public convenience is favored and the public interest protected and the legislative intent as derived from the language used is given effect.

Appellants in further support of their position point to the fact that whereas the State Engineer knew of the situation with reference to the well in question in the year 1950, as appears from the evidence in the record, he never made any move to enjoin appellants' use of the water as he had a right to do in the name of the State and through the Attorney General, State ex rel. Bliss v. Dority, supra, and never made a contention that the right claimed by appellants was not a good and valid

one until after this case had been filed. Also, they argue that the rules adopted by the State Engineer pursuant to statutory authority indicate an understanding that the law was as contended for by appellants. However, if in fact appellants were using water illegally, the fact that no action had been taken to enjoin its use or that the law had been erroneously construed by the State Engineer could in no way estop or prejudice the State in asserting its rights. State ex rel. Erickson v. McLean, 62 N.M. 264, 308 P.2d 983; Farmers' Development Co. v. Rayado Land & Irrigation Co., supra.

Appellees in their argument in support of their position that the trial court was correct in its ruling, rely on the fact that the Roswell Artesian Basin was overappropriated in the year 1950, and that to conclude that appellant had a right would constitute a detriment to those with prior rights. Principal reliance is placed on Pecos Valley Artesian Conservancy Dist. v. Peters, supra. However, we do not find in that case anything to support their position. This court there held that the Conservancy District was a proper party to bring the action, and that it made no difference in the court's conclusions if the well, the use of which was sought to be enjoined had been legally commenced before the district was extended to include its location, or was within the district at all times and had been illegally drilled.

The basis of the decision was that if the artesian waters were being diverted from those having a prior right thereto so as to deprive them of the benefits thereof it was immaterial if the well was a legal well drilled outside the basin as declared, or was an illegal well drilled inside its boundaries, the right to enjoin the taking of the water was present.

The case did not hold or even imply that if the well was legally commenced outside the boundaries of the basin as declared, no rights could be acquired to any waters available for appropriation, if the boundaries were extended during development and before the water was placed to beneficial use. What was said in effect was that if a right was acquired it was junior and inferior to the prior rights and could be enjoined upon a showing that the water applicable to the senior rights was being taken, whether the place of taking was inside a declared basin or outside. It is interesting to note that in the second appeal of Pecos Valley Artesian Conservancy Dist. v. Peters, reported at 52 N.M. 148, 193 P.2d 418, a decree denying an injunction was affirmed in this court, the court pointing out that where there was a failure of proof as to the amount of water to which prior appropriators were legally entitled it was proper to refuse to enjoin the use by the junior appropriator. In effect, the appropriation was thereby recognized as legal as of the date of com-

mencement of the well even though the declaration of the basin had intervened before water was put to beneficial use. It does not appear that anything to the contrary was suggested or considered.

In the instant case there was no effort made to prove that appellants were using water already appropriated. The case was not tried on any such theory. As a matter of fact, this is a suit for the adjudication of rights to water in the Roswell Artesian Basin brought under the provisions of §§ 75-4-4 and 75-4-6, N.M.S.A.1953, in which ultimately a determination will be made of "the priority, amount, purpose, periods and place of use * * * the specific tracts of land to which it shall be appurtenant, together with such other conditions as may be necessary to define the right and priority" as required by § 75-4-8, N.M.S.A. 1953. State ex rel. Reynolds v. Sharp, 66 N.M. 192, 344 P.2d 943.

Necessarily, the question of the presence or absence of any water right based on the proof presented had to be determined by the court. However, a legal right having been established, its priority in relation to other valid rights remained open for final determination. It seems to us that appellees confuse these two propositions. State ex rel. Reynolds v. Sharp, supra; Templeton v. Pecos Valley Artesian Conservancy Dist., 65 N.M. 59, 332 P.2d 465.

We are convinced that appellants having legally commenced drilling their well on or before May 31, 1949, and having proceeded diligently to develop the water and place it to beneficial use on the 248.49 acres in the crop year 1950, they thereby acquired a good and valid water right therefor with a priority date of May 31, 1949, as found by the Special Master, and that the intervening order extending the Roswell Artesian Basin on February 6, 1950, in no way affected the legality or validity of the appropriation.

The district court having decided otherwise, the order appealed from is reversed, and the cause remanded, with instructions that the order be set aside, and a new order entered in conformity with the views herein expressed.

It is so ordered.

COMPTON, C. J., and CARMODY, J., concur.

CHAVEZ and NOBLE, JJ., not participating.