This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-36872**

**DOÑA ANA MUTUAL DOMESTIC
WATER CONSUMERS ASSOCIATION,**

 Plaintiff-Appellee/Cross-Appellant,

v.

**ESTATE OF FORREST WESTMORELAND,
Deceased, Joyce Westmoreland, Personal
Representative, and JOYCE
WESTMORELAND, Individually,**

 Defendants-Appellants/Cross-Appellees.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Manuel I. Arrieta, District Court Judge**

Law Office of Joshua L. Smith, LLC
Joshua L. Smith
Mesilla Park, NM

for Appellee

Martin & Lutz, P.C.
William L. Lutz
David P. Lutz
Las Cruces, NM

for Appellants

**MEMORANDUM OPINION**

**DUFFY, Judge.**

**{1}** The underlying case arose after Defendants deeded the same 82 acre-feet per year (afy) of vested water rights to two different purchasers—first to Plaintiff in 2002,

and then to a third party—Moongate Water Company—in 2012. Plaintiff sued Defendants for damages resulting from breach of contract and fraud; Defendants counterclaimed for breach of contract. The district court, following a bench trial, found in favor of Plaintiff on its breach of contract claim and awarded compensatory damages along with pre- and postjudgment interest. Defendants appeal and Plaintiff cross-appeals the district court's judgment. We affirm.

**BACKGROUND**

{2}     The parties are familiar with the facts and the procedural history and they generally do not challenge the district court's detailed findings of fact. We provide a brief overview here.

{3}     Before Defendants sold the water rights to Plaintiff in 2002, Defendants had entered into a contract with Moongate Water Company whereby Defendants sold the Apollo Estates Water Distribution System and conveyed all rights to provide water to the area to Moongate. The Moongate contract called for Defendants to transfer 50 afy to Moongate to serve existing customers of Apollo Estates, and also required Defendants to reserve an additional 100 afy of water rights to serve additional connections in the future. In 1997, Moongate placed 82.49 afy of its reserved rights to beneficial use, which is a necessary precondition to the rights changing from inchoate or "Mendenhall" rights to "vested" rights. *See Eldorado Utilities, Inc. v. State ex rel. D'Antonio*, 2005-NMCA-041, ¶ 10, 137 N.M. 268, 110 P.3d 76 ("[A] water right becomes vested when the water is placed to beneficial use."); *see also State ex rel. Reynolds v. Mendenhall*, 1961-NMSC-083, ¶ 12, 68 N.M. 467, 362 P.2d 998.

{4}     In 2002, Defendants entered into a water rights purchase agreement with Plaintiff (the 2002 Purchase Agreement), where Defendants agreed to sell 82 afy of vested water rights and 335.4 afy of Mendenhall water rights to Plaintiff. Although Defendants represented otherwise, the 82 afy of vested water rights Defendants sold to Plaintiff were the same 82 afy Moongate had placed into beneficial use. In the 2002 Purchase Agreement, Defendants promised, among other things, that they would not "sell, pledge, encumber, alter, assign, convey or otherwise affect in any way the Water Rights and Mendenhall Water Rights to any party at any time." The 2002 Purchase Agreement specified that Plaintiff would pay for the 82 afy over ten years for a purchase price of $147,000, and Plaintiff would pay $400 per acre-foot for the Mendenhall rights at the time those rights were put to beneficial use.

{5}     After the 2002 Purchase Agreement, Moongate filed a complaint with the New Mexico Public Regulation Commission (PRC) to prevent Plaintiff from serving water to customers in the area east of Interstate 25. This ultimately resulted in an opinion from our Supreme Court in 2006 affirming a PRC order prohibiting Plaintiff from serving any customers east of Interstate 25, since it was determined that this is Moongate's exclusive service area. *See Doña Ana Mut. Domestic Water Consumers Ass'n v. N.M. Pub. Regul. Comm'n*, 2006-NMSC-032, ¶ 29, 140 N.M. 6, 139 P.3d 166; *see also*

*Moongate Water Co. v. Doña Ana Mut. Domestic Water Consumers Ass'n*, 420 F.3d 1082, 1084 (10th Cir. 2005).

**{6}**     In 2012, in response to a demand by Moongate, Defendants executed a quitclaim deed to Moongate for 100 afy of water rights previously reserved in the Moongate Contract. These 100 afy included the 82 afy that Defendants had conveyed to Plaintiff pursuant to the 2002 Purchase Agreement.

**{7}**     Plaintiff filed suit against Defendants in 2013, seeking damages for Defendants' breach of the 2002 Purchase Agreement and fraudulent misrepresentations. The district court awarded Plaintiff damages on its breach of contract claim, determined that the undeveloped Mendenhall rights would revert to Defendants, and denied the parties' other claims against each other. Both sides appeal.

## DISCUSSION

### I.     Defendants' Appeal

**{8}**     Defendants raise four issues in their appeal. They argue they did not breach the 2002 Purchase Agreement because (1) Plaintiff "took a calculated business risk in proceeding with the contract with full knowledge of the existing facts which constituted the breach," and (2) Defendants had a known preexisting duty to convey the water rights to Moongate. We address these arguments together because they amount to the same issue: whether Defendants breached the 2002 Purchase Agreement. Defendants also argue that the district court should have (3) dismissed Plaintiff's complaint as barred by the applicable statute of limitations, and (4) determined that Plaintiff breached the 2002 Purchase Agreement by not developing the Mendenhall water rights.

### A.     Defendants Breached the 2002 Purchase Agreement

**{9}**     Defendants first challenge the district court's conclusion that they breached the 2002 Purchase Agreement. Defendants made a specific promise in the agreement that they would "not sell, pledge, encumber, alter, assign, convey or otherwise affect in any way the Water Rights and Mendenhall Water Rights to any party at any time." The district court found that Defendants breached this term when they quitclaimed the 100 afy of vested water rights to Moongate in 2012.

**{10}**    Defendants claim there was no breach because Plaintiff entered into the contract with full knowledge of Defendants' preexisting obligation to Moongate. Relying solely on out-of-state authority, Defendants assert that the district court should have interpreted the contract in light of the surrounding circumstances known to the parties at the time of execution. According to Defendants, the parties were aware of Defendants' obligation to

Moongate and contemplated that conveyance. Defendants conclude that Plaintiff cannot rely on the occurrence of a known risk as the basis for breach or damages.[1]

**{11}** We reject Defendants' invitation to consider collateral evidence to interpret the parties' contract. Under settled New Mexico law, "[t]he purpose, meaning and intent of the parties to a contract is to be deduced from the language employed by them; and where such language is not ambiguous, it is conclusive." *ConocoPhillips Co. v. Lyons*, 2013-NMSC-009, ¶ 23, 299 P.3d 844 (internal quotation marks and citation omitted); *accord Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 31, 314 P.3d 688. While courts may consider extrinsic evidence to determine whether a contract is ambiguous, *see Mark V, Inc. v. Mellekas*, 1993-NMSC-001, ¶ 12, 114 N.M. 778, 845 P.2d 1232, Defendants did not argue below or on appeal that the 2002 Purchase Agreement is ambiguous. Consequently, we are bound to give effect to the parties' intent as expressed in the clear and unambiguous terms of their contract.

**{12}** The 2002 Purchase Agreement contained a clear promise that Defendants would not sell, encumber, or otherwise affect the water rights they sold to Plaintiff. Defendants violated that term when they quitclaimed the vested water rights to Moongate in 2012. The district court did not err in determining that the Defendants breached their contract with Plaintiff.

## B.      Statute of Limitations

**{13}** Defendants argue that Plaintiff's claim for breach of contract was barred by the six-year statute of limitations, NMSA 1978, § 37-1-3(A) (1975, amended 2015). "The statute of limitations on a breach of contract claim runs from the date the contract is breached." *Nashan v. Nashan*, 1995-NMCA-021, ¶ 29, 119 N.M. 625, 894 P.2d 402. The district court concluded that the breach occurred in 2012 when Defendants executed the quitclaim deed to Moongate, and that Plaintiff's suit was timely filed the following year.

**{14}** Defendants argue the breach occurred in 2002 when the parties executed the Purchase Agreement because Plaintiff was aware of Defendants' prior obligation to convey the water rights to Moongate. Alternatively, Defendants argue that the breach occurred early in 2007 when Plaintiff began to negotiate with Moongate. Defendants do not explain how these events constitute a breach of any of the representations and warranties contained in the parties' contract, and we see no basis for concluding that they did. We perceive no error in the district court's conclusion that the breach occurred in 2012, when Defendants deeded 100 afy of water rights to Moongate—this was the act that constituted a sale, encumbrance, or conveyance in violation of the terms of the

---

[1]Defendants also imply that the 2002 Purchase Agreement is itself unenforceable, illegal, or contrary to public policy to the extent it required Defendants to breach their preexisting contract with Moongate. Defendants do not direct us to where this issue was preserved, and therefore we decline to address this issue on appeal. *See Glaser v. LeBus*, 2012-NMSC-012, ¶ 13, 276 P.3d 959 (stating that where a party fails to comply with the requirement to demonstrate where a claim was preserved, an appellate court has discretion to refuse to consider the issue).

2002 Purchase Agreement. Accordingly, we hold that Plaintiff's breach of contract action was timely when filed in 2013.

**C.    Plaintiff Did Not Breach the 2002 Purchase Agreement**

**{15}**    Defendants asserted a counterclaim alleging that Plaintiff breached the 2002 Purchase Agreement by not developing the Mendenhall rights. Defendants argue that the district court erred in determining that it was impossible for Plaintiff to do so.

**{16}**    The 2002 Purchase Agreement provided that Plaintiff would "initiate the development of the Mendenhall Water Rights in an expeditious manner by starting to serve within the declared Service Area to which the Mendenhall Water Rights are appurtenant." This service area was primarily west of Interstate 25, although Plaintiff assumed it had an overlapping service area that extended east of Interstate 25. Under the 2002 Purchase Agreement, Plaintiff's obligation to pay Defendant for the Mendenhall rights arose at the time Plaintiff developed those rights by placing them into beneficial use.

**{17}**    The district court found that Plaintiff "took active steps to place the Mendenhall water rights to beneficial use including: advertising for an application to drill a new well east of Interstate 25; engaging in litigation to extend their service area to the east side of Interstate 25; and planning for a site to place a new storage tank." The court found, however, that Plaintiff "is effectively foreclosed from developing water rights on the east side of Interstate 25" due to a federal court lawsuit that determined Moongate had the exclusive right to serve water in the area east of Interstate 25. The district court also found that Plaintiff could not develop the Mendenhall claims for the area west of Interstate 25 without owning the vested water rights that Defendants deeded to Moongate in 2012. The district court found, based on the trial testimony, that (1) the Office of the State Engineer (OSE) would expect Plaintiff to develop its own Mendenhall rights on the west side of Interstate 25 before it could develop any Mendenhall rights from a different service area (i.e. the rights that Plaintiff purchased from Defendants); (2) Plaintiff had not been able to develop any of its own rights west of Interstate 25 "[d]ue to increased water conservation and efficiencies"; and (3) the Mendenhall rights at issue could not be moved from the east side to the west side of Interstate 25 because such a move could only take place after Plaintiff developed the Mendenhall rights it purchased from Defendants, and Plaintiff could not develop those rights without owning the vested water rights that Defendants deeded to Moongate. Accordingly, the court concluded that "[Plaintiff's] obligations under the Purchase Agreement . . . became frustrated, impractical, unreasonably burdensome or impossible due to the legal restrictions imposed by regulatory agencies and the courts." The district court determined that Plaintiff "should be relieved of any obligation to develop [the] Mendenhall water rights under the Purchase Agreement and the undeveloped water rights should revert back to [Defendants]," noting that Plaintiff had not yet paid any sum to Defendants for the Mendenhall rights.

**{18}**    On appeal, Defendants assert that there was no impossibility of performance because "[i]t was undisputed . . . that [Plaintiff] could have developed the water rights west of I-25." However, the district court's findings, detailed above, contradict this assertion. Defendants do not challenge the sufficiency of the evidence supporting these findings. Instead, they point to contrary evidence, but we will not reweigh the evidence on appeal. *See N.M. Tax'n & Revenue Dep't v. Casias Trucking*, 2014-NMCA-099, ¶ 20, 336 P.3d 436 ("The question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." (internal quotation marks and citation omitted)). The district court's findings ultimately support its overarching determination that it was impossible for Plaintiff to develop the Mendenhall rights at issue; therefore, we affirm the district court's determination that impossibility excused Plaintiff from developing the Mendenhall rights under the 2002 Purchase Agreement.

## II.    Plaintiff's Cross-Appeal

**{19}**    Plaintiff raises four issues on cross-appeal, arguing that the district court erred by (1) awarding damages in the amount of the contract price of the vested water rights instead of the fair market value for those rights, (2) determining that Plaintiff had not proven the element of reliance for its fraud claim, (3) setting the pre- and postjudgment interest rates, and (4) declining to award damages to Plaintiff for attorney fees Plaintiff incurred in litigating against Moongate.

## A.    Measure of Damages

**{20}**    Plaintiff argues that the district court used an incorrect measure of damages to redress Defendants' breach of the 2002 Purchase Agreement. The district court awarded Plaintiff damages in the amount of $174,224 plus interest from the date of the deed to Moongate forward—i.e., the contract price Plaintiff paid Defendant for the 82 afy of vested water rights plus interest from the time of breach. Plaintiff argues that because the contract price for the water rights in 2002 is much less than the value of water rights at the time of the breach in 2012, the district court should have awarded the fair market value of the water rights at the time of breach or judgment.

**{21}**    We reject Plaintiff's argument for the simple reason that the district court awarded Plaintiff the exact relief it requested. Beginning with the complaint for damages, Plaintiff requested that the district court award actual damages of "$147,600 in payments, plus pre-judgment interest at a minimum of 5%, *or* [t]he full current value of 82 vested acre feet of water rights." (Emphasis added.) At trial, Plaintiff addressed damages during closing, stating that it was requesting basic contract damages of the current value of the vested water rights at between $3,000 and $3,500 per acre-foot, or the "[a]lternative means of damages, . . . the actual [$]175,000 or so that [Plaintiff] actually paid out in payments and interest over ten years to the [Defendants], plus interest on those payments." Given this, Plaintiff cannot now be heard to complain that the district court erred in its damages calculation without running afoul of the invited error doctrine. *See Chris L. v. Vanessa O.*, 2013-NMCA-107, ¶ 27, 320 P.3d 16 ("Invited

error occurs where a party has contributed, at least in part, to perceived shortcomings in a trial court's ruling, and, as a result, the party should hardly be heard to complain about those shortcomings on appeal." (alteration, omission, internal quotation marks, and citation omitted)).

**{22}** Because Plaintiff specifically requested the measure of damages used by the district court, we affirm the district court's damages calculation.

## B. Fraud Claim

**{23}** Plaintiff next argues that the district court erred in determining that Plaintiff's fraud and fraudulent misrepresentation claims fail because Plaintiff did not establish the element of reliance. *See* UJI 13-1633 NMRA (providing that fraud requires proof of the following elements: (1) "a representation of fact was made which was not true"; (2) "either the falsity of the representation was known to the party making it or the representation was recklessly made"; (3) "the representation was made with the intent to deceive and to induce [the claimant] to rely on the representation"; and (4) "[the claimant] did in fact rely on the representation").

**{24}** The district court found that Defendants made willful and fraudulent misrepresentations to Plaintiff. In general terms, Defendants misrepresented that their preexisting contract with Moongate (which reserved 100 afy for Moongate) was unenforceable and that Moongate had not placed any of the 100 afy to beneficial use.

**{25}** Notwithstanding these misrepresentations, the district court found that Plaintiff did not rely on them when Plaintiff entered into the 2002 Purchase Agreement. The district court found that Plaintiff was aware of Defendants' 1988 contract with Moongate:

> In 2001, [Plaintiff] noted that the August 1988 Contract of Sale between [Defendant] and Moongate had a reserved requirement for 100 afy of additional water rights from [Defendants'] wells which could form the basis for the vested 82 afy. [Plaintiff] was concerned . . . about a claim that Moongate might make on the water rights sold to it under the Purchase Agreement. Nonetheless, [Plaintiff] relied on advice of counsel that the water rights were valid and proceeded with the purchase.

The district court found that Plaintiff "believed that while Moongate might have a contractually based claim to the 82 afy, Moongate failed to perfect title by failing to timely file ownership documents with the OSE and did not obtain ownership by title until the quitclaim deed of 2012."[2] The district court also found that Plaintiff "believed in good faith that it had an overlapping service area with Moongate" and that Plaintiff "undertook a calculated business risk in obtaining [Defendants'] water rights believing that it could ultimately obtain an exclusive right to serve the east side of Interstate 25, and having

---

[2]The district court noted that in 2002, it was unclear "whether a water service company placing into beneficial use inchoate water rights belonging to the land owner, could claim to be the owner of those rights."

vested water rights (82 afy) perfected prior to Moongate, that it could expand in the area and start placing the Mendenhall rights to beneficial use." In essence, the district court found that Plaintiff was aware of Moongate's potentially conflicting claim to the vested rights and the service area, but proceeded in the face of this knowledge believing it would be able to perfect title first and force Moongate out of the service area east of Interstate 25.

**{26}** On appeal, Plaintiff argues that the district court erred in finding that Plaintiff "relied on the advice of counsel that the water rights were valid and proceeded with the purchase." Plaintiff asserts that Defendants' misrepresentations "preclude the defense of advice of counsel since [Plaintiff's] counsel was not provided a full disclosure of the facts." Plaintiff does not elaborate on what information it was unaware of at the time it entered into the contract or how Plaintiff was deceived by Defendants' misrepresentations, nor does Plaintiff address the district court's findings regarding its knowledge of the state of affairs at the time the parties entered into the 2002 Purchase Agreement. The unchallenged findings indicate that Plaintiff knew of Moongate's conflicting contractual claim to the 82 afy, and instead of relying on Defendants' assurances, Plaintiff proceeded with the deal believing it could nonetheless obtain good title. Based on these findings, there is sufficient evidence to support the district court's conclusion that Plaintiff did not rely on Defendants' misrepresentations to its detriment. Our holding resolves the additional issue of punitive damages resulting from this claim as argued in Plaintiff's brief.

## C. Pre- and Postjudgment Interest Rates

**{27}** Plaintiff argues the district court erred in its calculation of pre- and postjudgment interest. We review the district court's award of interest for abuse of discretion. *Holcomb v. Rodriguez*, 2016-NMCA-075, ¶¶ 26, 31, 387 P.3d 286.

**{28}** The interest rates are governed by NMSA 1978, Section 56-8-4 (2004). Regarding prejudgment interest, the statute provides:

> B. Unless the judgment is based on unpaid child support, the court in its discretion may allow interest of *up to ten percent* from the date the complaint is served upon the defendant after considering, among other things:
>
> > (1) if the plaintiff was the cause of unreasonable delay in the adjudication of the plaintiff's claims; and
> >
> > (2) if the defendant had previously made a reasonable and timely offer of settlement to the plaintiff.

Section 56-8-4(B) (emphasis added). The district court awarded prejudgment interest at a rate of 5%. Plaintiff argues that the court should have applied a rate of 8.75% because "[t]he Purchase Agreement does not contain a default interest rate." As discussed in

Section II.(A) of this opinion, Plaintiff specifically requested a prejudgment interest rate of 5%. Plaintiff's argument on appeal does not establish an abuse of discretion in the district court's selection of this rate. We therefore affirm the district court's determination of the prejudgment interest rate.

**{29}** Regarding postjudgment interest, the statute provides:

> A. Interest shall be allowed on judgments and decrees for the payment of money from entry and shall be calculated at the rate of eight and three-fourths percent per year, unless:
>
> (1) the judgment is rendered on a written instrument having a different rate of interest, in which case interest shall be computed at a rate no higher than specified in the instrument; or
>
> (2) the judgment is based on tortious conduct, bad faith or intentional or willful acts, in which case interest shall be computed at the rate of fifteen percent.

Section 56-8-4(A). The district court awarded Plaintiff postjudgment interest at the standard rate of 8.75% set out in Section 56-8-4(A). Plaintiff argues that it is entitled to the higher 15% rate specified in Section 56-8-4(A)(2) because the district court found "[b]y clear and convincing evidence, [Defendants'] representations to [Plaintiff] in 2001 and 2002 were willful and fraudulent misrepresentations." Plaintiff's argument on this point appears contingent on this Court overturning the denial of Plaintiff's fraud claim. As we have declined to do so, and because Plaintiff did not prevail on any cause of action other than simple breach of contract, the *judgment* in this case is not based upon bad faith or intentional or willful acts. Because 15% postjudgment interest is only mandatory under those circumstances, the district court did not abuse its discretion by awarding Plaintiff 8.75% postjudgment interest in this case.

## D.     Attorney Fees From the Moongate Litigation

**{30}** Finally, Plaintiff argues that the district court should have awarded as damages the attorney fees Plaintiff incurred in litigating with Moongate about title to the 82 afy rights at issue. As explained above, we affirm the district court's conclusion that Plaintiff did not prove its fraud claim. Therefore, we address only whether the district court should have awarded these attorney fees as damages for breach of contract.

**{31}** Plaintiff points to *Dinkle v. Denton*, 1961-NMSC-012, ¶ 36, 68 N.M. 108, 359 P.2d 345, in which our Supreme Court stated,

> It is generally held that where the wrongful act of the defendant has involved the plaintiff in litigation with others or placed him in such relation with others as makes it necessary to incur expense to protect his interest, such costs and expenses, including attorneys' fees, should be treated as

the legal consequences of the original wrongful act and may be recovered as damages.

(Internal quotation marks and citation omitted.) *See generally* Restatement (Second) of Contracts § 351 cmt. c. (1981) (noting that a foreseeable loss resulting from the breach may include reasonable expenditures in litigation with a third party); 22 Am. Jur. 2d *Damages* §§ 450 (2022) ("A plaintiff has the right to recover attorney's fees incurred in other litigation with a third person if the plaintiff was involved in that litigation as a result of a breach of contract or tortious act by the present defendant."); 11 Joseph M. Perillo, *Corbin on Contracts* § 57.9, at 282-83 (rev. ed. 2005) ("If the breach causes litigation with a third party, the expenses of litigation, including attorneys' fees can be recovered."). Where such fees may be awarded, they are awarded as consequential damages. 11 Perillo, *supra*, at 281.

{32}    Because Plaintiff's entitlement to fees for such litigation would be consequential damages, they may only be awarded where the damages "were objectively foreseeable as a probable result of his or her breach when the contract was made." *Sunnyland Farms, Inc. v. Cent. N.M. Elec. Coop., Inc.*, 2013-NMSC-017, ¶ 16, 301 P.3d 387. To support a conclusion that damages were foreseeable, a court asks "whether there were special circumstances, beyond the ordinary course of events, that the party in breach had reason to know. In the absence of such circumstances, the breaching party is liable only for general damages." *Id.* ¶ 13 (internal quotation marks and citations omitted); *see also id.* ¶ 17.

{33}    At trial, Plaintiff introduced evidence of Moongate's suit and the attorney fees Plaintiff had paid in defending that suit. Plaintiff stated that it was offering this evidence "as an element of damages that this case was filed, and [Plaintiff] had to defend it, and pay to defend it." However, Plaintiff did not argue or present evidence of special circumstances that would justify an award of attorney fees as consequential damages. Plaintiff has similarly made no showing as to its entitlement to consequential damages on appeal. Because Plaintiff did not present an argument or point to evidence supporting an award of consequential damages, and there were no findings of special circumstances, the district court did not err by declining to award Plaintiff attorney fees for collateral litigation as consequential damages.

## CONCLUSION

{34}    For all of the above and foregoing reasons, we affirm the district court's findings and decision.

{35}    **IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**ZACHARY A. IVES, Judge**