2002-NMSC-013

46 P.3d 687

**RAUSCHER, PIERCE, REFSNES, INC., Petitioner–Petitioner,**

v.

**The TAXATION AND REVENUE DEPARTMENT OF the STATE OF NEW MEXICO, Respondent–Respondent.**

**No. 26,344.**

Supreme Court of New Mexico.

April 29, 2002.

Sutin, Thayer & Brown, P.C., Mary E. McDonald, Santa Fe, NM, for Petitioner.

Patricia A. Madrid, Attorney General, Bridget Jacober, Special Assistant Attorney General, Santa Fe, NM, for Respondent.

Betzer, Roybal & Hill, P.C., Benjamin C. Roybal, Albuquerque, NM, for Amicus Curiae Southwest Securities, Inc., and KMPG, L.L.P.

## OPINION

MINZNER, Justice.

{1} Petitioner Dain Rauscher, Inc., formerly Rauscher, Pierce, Refsnes, Inc. ("Rauscher"), appeals from an opinion of the Court of Appeals. *Rauscher, Pierce, Refsnes, Inc., v. Taxation & Revenue Dep't,* 2000–NMCA–065, 129 N.M. 404, 9 P.3d 648. In its opinion, the Court of Appeals affirmed the Decision and Order of a hearing officer employed by the New Mexico Taxation and Revenue Department ("the Department"). The hearing officer had affirmed the Department's assessment of gross receipts tax, interest, and penalty under the Gross Receipts and Compensating Tax Act ("the Act"), NMSA 1978, §§ 7–9–1 to –91 (1966, as amended through 2001). Rauscher contends the hearing officer erred in rejecting its claim under NMSA 1978, § 7–9–25 (1969), which provides: "[e]xempted from the gross receipts tax are . . . receipts from the sale of stocks, bonds or securities." We granted Rauscher's petition for writ of certiorari to the Court of Appeals pursuant to Rule 12–502 NMRA 2002 and NMSA 1978, § 34–5–14(B) (1972) in order to review the issue of whether any of Rauscher's receipts from the sale of mutual fund shares to its customers are taxable as gross receipts under the Act. The Act defines gross receipts to include "the total commissions or fees derived from the business of buying, selling or promoting the purchase, sale or leasing, as an agent or broker on a commission or fee basis, of any property, service, stock, bond or security." NMSA 1978, § 7–9–3(F)(1)(b) (1989, prior to 2001 amendment). We affirm.

## I.

{2} Rauscher is a broker-dealer of securities licensed under the New Mexico Securities Act of 1986, NMSA 1978, § 58–13B–3 (1986). Rauscher was based in Dallas, Texas during the relevant period, but operated an office in Albuquerque. The business transactions at issue in this case are Rauscher's sales of mutual fund shares to individual and corporate investors. On June 3, 1993, the Department assessed Rauscher gross receipts taxes, interest, and penalty for the period from January 1987 to June 1992. The Department based its assessment on an auditor's finding that Rauscher had earned commissions on sales of mutual fund shares and commodities but had deducted sums attributable to the commissions in reporting its gross receipts. Rauscher paid the portion of the assessment attributable to commissions on the sale of commodities. In protesting the assessment attributable to sales of mutual fund shares, Rauscher relied on Section 7–9–25. In opposing the protest, the Department argued that Rauscher had received commissions for its services as an agent and thus it had taxable gross receipts under Section 7–9–3(F)(1)(b). On July 8, 1998, the Department's hearing officer denied the protest. The hearing officer's description of the transactions is unchallenged.

{3} To fill customer orders for mutual fund shares, broker-dealers such as Rauscher purchase shares of the fund from another broker-dealer who has agreed to act as that fund's principal underwriter and who has purchased shares for resale. The contractual terms under which a broker-dealer purchases shares for its customers generally include a "dealer concession," which is a per-

centage discount on the market price of the shares. This percentage, fixed by the fund's prospectus, varies but is typically five percent. After receiving this discount, a broker-dealer sells the mutual fund shares to its customers at market value, as required by the Investment Companies and Advisors Act of 1940, 15 U.S.C. §§ 80a–1 to –64 (1994).

{4} The same contractual terms provide that the purchasers act as principals rather than agents. They may hold such shares briefly in inventory, but when not purchasing for their own investment can only purchase to fill a customer's order. The hearing officer's Finding of Fact 18 indicates that "[d]uring the audit period [Rauscher] did not make purchases of mutual fund shares for its own investment. All purchases were made as a result of the placement of an order for purchase of shares by [Rauscher's] clients. . . ."

{5} The hearing officer made other findings relevant to this appeal. First, the hearing officer found that Rauscher did not act as an agent of either its customers or the mutual fund underwriters in its mutual fund transactions. Second, the hearing officer found that Rauscher purchased mutual fund shares for its own account. Third, the hearing officer found that during the audit period, Rauscher made its mutual fund purchases for its customers and not for its own investment. Fourth, the hearing officer found that Rauscher bears the risk of loss in the event that its customers do not purchase the mutual fund shares, but that Rauscher's contracts with its customers allow Rauscher to hold the customer liable for any losses Rauscher incurs.

{6} Relying in part on definitions of "broker" in statutes outside the Act, the hearing officer ultimately concluded that Rauscher was acting as a broker in its mutual fund transactions. Relying on the breadth of the phrase "commissions or fees" in Section 7–9–3(F)(1)(b), the hearing officer also concluded that the dealer concession discussed above was a taxable gross receipt under the Act. Consequently, the hearing officer denied Rauscher's protest and held in favor of the Department.

{7} Pursuant to NMSA 1978, § 7–1–25 (1989), Rauscher appealed to the Court of Appeals, arguing that it had engaged in sales of securities and that the sums upon which the Department had assessed gross receipts taxes represented its profits on these sales, not commissions or fees. Relying on the hearing officer's finding that it had purchased the mutual fund shares for its own account, Rauscher argued that it was not acting as a broker but rather was acting as a principal. The Department, on the other hand, argued, as it had argued to the hearing officer, "that the substance of the transactions, as opposed to [the] form, was not a true sale of [Rauscher's] own securities." *Rauscher,* 2000–NMCA–065, ¶ 4, 129 N.M. 404, 9 P.3d 648.

{8} The Court of Appeals held that Rauscher "was actually earning 'commissions or fees' (the 'dealer concessions') which are taxable when earned by a 'broker' from the sale or promotion of stocks, bonds or securities owned by others." *Id.* The Court of Appeals rejected Rauscher's reliance on the hearing officer's finding that it purchased the mutual fund shares for its own account, on the grounds that Rauscher had purchased for its own account because federal securities law required it to do so, and that federal securities law requirements were not dispositive of the state tax law questions presented by Rauscher's protest and appeal. *Id.* ¶ 13. The Court of Appeals affirmed the hearing officer's conclusions that Rauscher was acting as a broker in the mutual fund transactions and had earned taxable commissions or fees for its services in New Mexico. *Id.* ¶¶ 18, 26. The Court of Appeals also rejected Rauscher's argument that if it performed any services, these services were part of a transaction in which the dominant taxable element was an exempt sale of property and that the hearing officer's decision should be applied prospectively as a new administrative rule. *Id.* ¶¶ 27–28. Finally, the Court of Appeals rejected Rauscher's argument that its mutual fund transactions were substantially completed outside of New Mexico and therefore not subject to taxation under the Act. *Id.* ¶ 30.

{9} On appeal to this Court, Rauscher continues to argue that its receipts from the mutual fund transactions are exempt from

the gross receipts tax because the transactions that generate the receipts are sales of securities. Relying on the hearing officer's findings, Rauscher contends that the findings compel a conclusion that it sold its own property and is therefore exempt from the tax. Rauscher also argues that even if a portion of the sales price can be characterized as compensation for services, it is entitled to claim the exemption because the hearing officer found that almost all of its receipts from the mutual fund transactions were sale proceeds rather than compensation for services. In addition, Rauscher argues that the majority of its mutual fund transactions occurred out-of-state and are not taxable under the Act. Finally, Rauscher asks that the Court of Appeals' affirmance of the hearing officer be given prospective effect. We consider each of these arguments below in light of the statutory standard of review. *See* § 7–1–25(C). "Upon appeal, the court shall set aside a decision and order of the hearing officer only if found to be: (1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with the law." *Id.*

## II.

**■** {10} We first review the statutory scheme governing the Department in assessing Rauscher's gross receipts taxes, interest, and penalty. The Act imposes an "excise tax equal to five percent of gross receipts" upon any person engaging in business in New Mexico. NMSA 1978, § 7–9–4(A) (1990). "The purpose of the gross receipts tax is that individuals should pay taxes for the 'privilege' of engaging in business within New Mexico.'" *ITT Educ. Servs., Inc. v. Taxation & Revenue Dep't*, 1998–NMCA–078, ¶ 5, 125 N.M. 244, 959 P.2d 969 (citation omitted). In addition, the Act is intended to "protect New Mexico businessmen from the unfair competition that would otherwise result from the importation into the state of property without payment of a similar tax." NMSA 1978, § 7–9–2 (1966).

**■** {11} Exemptions to the gross receipts tax are to be "construed strictly in favor of the taxing authority.... 'Thus, taxa-

tion is the rule and the claimant must show that his demand is within the letter as well as the spirit of the law.'" *Kewanee Indus., Inc., v. Reese*, 114 N.M. 784, 791, 845 P.2d 1238, 1245 (1993) (citations omitted). Indeed, the Legislature has specifically indicated that "[t]o prevent evasion of the gross receipts tax and to aid in its administration, it is presumed that all receipts of a person engaging in business are subject to the gross receipts tax." NMSA 1978, § 7–9–5 (1966).

{12} Section 7–9–3(F)(1)(b) specifically places within the reach of the Act "the total commissions or fees derived" from the sale of securities as a broker. Moreover, the Department has promulgated a regulation, which was in effect at the time of the' mutual fund transactions at issue, consistent with the statutory provision: "Commissions received by stockbrokers, located in New Mexico, are not receipts from the sale of stocks, bonds or securities. The commissions are receipts from the performance of a service in New Mexico and are subject to the gross receipts tax." N.M. Admin. Code tit. 3, § 2.11.3.8 (1996). Under NMSA 1978, § 7–9–3(K) (2001), " 'service' means all activities engaged in for other persons for a consideration, which activities involve predominantly the performance of a service as distinguished from selling or leasing property."

{13} Although Section 7–9–3(F)(1)(b) includes within the universe of activities on which taxable commissions or fees can be earned the "purchase, sale or leasing" of "any property, service, stock, bond or security," Section 7–9–25 excludes from the definition of taxable receipts "receipts from the sale of stocks, bonds or securities." The first issues we address on appeal concern the propriety of the Department's reliance on Section 7–9–3(F)(1)(b) and its rejection of Rauscher's reliance on Section 7–9–25. For the reasons that follow, we believe the two statutes can be read in harmony with one another and that the hearing officer's findings and conclusions support his decision upholding the assessment.

## A.

{14} Both the hearing officer and the Court of Appeals rejected Rauscher's argu-

ment that its mutual fund transactions were sales of securities for the purposes of Section 7–9–25 and therefore exempt from the Act. The hearing officer concluded that Rauscher was subject to the gross receipts tax for its mutual fund transactions because although Rauscher was not acting as an agent, it was acting as a broker. Moreover, in its capacity as a broker, Rauscher was compensated for its mutual fund activity with a commission or fee. The Court of Appeals affirmed the hearing officer's conclusions that Rauscher acted as a broker in the transactions at issue and that Rauscher was compensated for its role in these transactions with a commission or fee.

{15} Rauscher contends that the hearing officer's findings that Rauscher acted as a principal and for its own account are inconsistent with the hearing officer's final disposition of Rauscher's protest. We disagree. These findings are entirely consistent with the conclusion that Rauscher acted as a broker and was compensated with a commission or fee given the disjunctive phrases "agent or broker" and "commissions or fees." Section 7–9–3(F)(1)(b).

### 1.

■ {16} Rauscher argues that it was not acting as a broker in its mutual fund transactions, noting, as did the hearing officer, a definition of "broker" taken from *Webster's Third New International Dictionary* 281 (1976): "an agent middleman who for a fee or commission negotiates contracts of purchase and sale . . . between buyers and sellers without himself taking title." Rauscher contends that "[u]nder the common, ordinary meaning of 'broker,' [it] was not acting as an agent or broker in the transactions." The hearing officer and the Court of Appeals analyzed this issue by considering the definitions of "broker" contained in New Mexico statutes other than the Act. *See* NMSA 1978, § 58–13B–2(B) (1999) (New Mexico Securities Act of 1986); 1987 N.M. Laws, ch. 248, § 20 (repealed 1996) (definition of "broker" in the Uniform Commercial Code prior to 1996 amendments); NMSA 1978, § 55–8–102(a)(3) (1996) (definition of "broker" after 1996 amendments); NMSA 1978, § 46–7–

12(C) (1989) (Uniform Transfer to Minors Act). The hearing officer considered the first three statutes cited; the Court of Appeals considered all four. *Rauscher,* 2000–NMCA–065, ¶¶ 15,16, 129 N.M. 404, 9 P.3d 648.

■ {17} The hearing officer reasoned there was no basis for concluding that the Legislature intended to limit the term "broker" to someone acting as an agent. We agree. We therefore reject Rauscher's argument that the hearing officer's finding that it was not acting as an agent is dispositive.

{18} The Court of Appeals reasoned that the term "broker" should be defined "as broadly as it is elsewhere in our statutes." *Rauscher,* 2000–NMCA–065, ¶ 18, 129 N.M. 404, 9 P.3d 648. Rauscher argues to this Court that the Court of Appeals' interpretation of "broker" results in a different application to the securities industry than to other businesses involving brokers and fails to distinguish "between a company selling securities for its own account or for the account of others." *Rauscher,* 2000–NMCA–065, ¶ 17, 129 N.M. 404, 9 P.3d 648.

{19} We cannot tell either from the briefs filed in the Court of Appeals or the briefs filed with this Court whether Rauscher has relied on the distinction in federal securities law between brokers and dealers. We recognize, as noted above, that Rauscher relies on the hearing officer's finding that it was acting as a principal, and purchased for its own account. We believe that finding reflects the distinction in federal securities law between brokers and dealers.

{20} The Court of Appeals reviewed federal law as it relates to this case, *Rauscher,* 2000–NMCA–065, ¶¶ 9–13, 129 N.M. 404, 9 P.3d 648, and we need not repeat that analysis here. We consider it sufficient to note that a dealer under federal law generally engages in the business of buying and selling securities for his or her own account, while a broker effects transactions in securities for the accounts of others. *Id.* ¶ 12. As a result of federal legislation designed to prevent industry abuses in mutual fund transactions, the contracts in this case between Rauscher, as intermediary, and the principal underwrit-

ers for the sale of mutual fund shares treat Rauscher as a principal acting for its own account. This makes Rauscher a dealer under federal law, even though Rauscher actually purchases the mutual fund shares exclusively for the purpose of filling purchase orders that it has already received from customers and is, in fact, precluded from holding the mutual fund shares in its inventory for sale. *Id.* ¶ 11. We agree with the Court of Appeals that there is no basis for a conclusion that the Legislature, by using the word "broker" in Section 7–9–3(F)(1)(b), intended to incorporate into the Act a distinction that serves a unique purpose in federal law.

{21} The questions presented under this heading are resolved not by deciding whether Rauscher would be categorized as a dealer or broker under federal law, but by whether the term "broker" as it appears in Section 7–9–3(F)(1)(b) encompasses Rauscher's role in the mutual fund transactions at issue and whether the hearing officer had sufficient evidence to find that Rauscher acted as a "broker" under New Mexico law. As presented to the hearing officer, the factual inquiry to answer was whether Rauscher was purchasing mutual fund shares for its own account or for the account of others. On this point, Rauscher concedes that it effected every transaction at issue in this case to fill an existing order placed by one of its customers. Because of the existence of this fact, we believe it is unnecessary to resolve whether the statutory term "broker" includes persons who sell securities for their own account, and we believe that it was unnecessary for the Court of Appeals to attribute a broad meaning to the statutory term "broker." The term "broker" in Section 7–9–3(F)(1)(b) includes a person selling securities on behalf of others, and the record contains substantial evidence demonstrating that Rauscher acted on behalf of its customers in its purchase and sale of the mutual fund shares at issue in this case. Given the evidence, we conclude that Rauscher acted as a broker within the meaning of Section 7–9–3(F)(1)(b).

## 2.

{22} Even if Rauscher acted as a broker, its receipts from its mutual fund transactions are only subject to the gross receipts tax if they represent a commission or fee. As the Court of Appeals noted, "[t]he entire scheme of paying the broker-dealer a fixed dealer concession has all the appearances of a commission or fee." *Rauscher*, 2000–NMCA–065, ¶ 22, 129 N.M. 404, 9 P.3d 648. We agree. First, the dealer concessions are a fixed percentage of the purchase price of the mutual fund shares. Black's Law Dictionary defines "commission" as "[a] fee paid to an agent or employee for a particular transaction, usu[ally] as a percentage of the money received from the transaction." *Black's Law Dictionary* 264 (7th ed.1999). Although not conclusive, this definition supports a determination that the dealer concession in each of the transactions is a commission. Second, Rauscher is purchasing the shares of mutual funds at the direction of its customers. Because in the transactions at issue Rauscher is purchasing mutual fund shares to fill a customer's order, Rauscher does not have the option of keeping the shares after it purchases them from the principal underwriter. It must either sell them to the customer or return them to the underwriter. This is not a typical purchase-resale transaction, in which the retailer retains merchandise it cannot sell. Rauscher has no discretion to retain these mutual fund shares as an owner.

{23} Rauscher contends that its mutual fund business is conducted through two separate transactions, which represent a sale of its own securities-the first being the purchase of mutual fund shares from an underwriter and the second being the sale of those shares to its customers. The hearing officer's decision implicitly rejects this contention. The hearing officer viewed the issue as whether the dealer concessions were properly characterized as commissions or fees or as receipts. If Rauscher's compensation should be characterized as "receipts from the sale of stocks, bonds or securities," the transactions are exempt. Section 7–9–25. If the compensation should be characterized as "commissions or fees," they are not. Section 7–9–3(F)(1)(b).

{24} Rauscher's mutual fund transactions do include sales, as that term is gen-

erally understood, because Rauscher transfers mutual fund shares to its customers for a consideration. We read these two specific statutes together, as did the hearing officer,[1] because on these facts they are both relevant, and for purposes of both statutes Rauscher's mutual fund transactions include sales. *See Gottsch Feeding Corp. v. State*, 261 Neb. 19, 621 N.W.2d 109, 117 (2001) ("A court will construe statutes relating to the same subject matter together so as to maintain a consistent and sensible scheme."). Reading these two statutes together, we conclude that the dispositive issues on the facts of this case are not whether Rauscher was selling securities when it effected the mutual fund transactions at issue, but whether Rauscher was compensated for the transactions at issue, and if so, how. The Legislature clearly contemplated that gross receipts would include compensation from selling securities. *See* § 7–9–3(F)(1)(b). Thus, the central question for the hearing officer under the Act was whether the compensation received by Rauscher was a commission or fee from a brokered transaction, not whether the transaction involved a sale.

{25} Following the hearing officer's decision, there seems to be no real dispute that Rauscher was compensated for the transactions. We recognize, as Rauscher argued to the hearing officer, that the dictionary definition of commission refers to a fee paid an agent, as does the law dictionary quoted under this heading. Nevertheless, the dictionary definition also gives as an example of commission: "a broker receives a [commission] on each share of stock bought for a customer." *Webster's Third New International Dictionary* 457 (1976). Further, as the hearing officer noted, the Legislature used a broader phrase, "commission or fee."

{26} We believe the question of how to characterize the "dealer concession" was a mixed question of fact and law. We resolve the issue of whether the compensation was a commission or fee primarily on the basis of

the facts found by the hearing officer, specifically the fact that the compensation was based on a fixed percentage and the fact that Rauscher acted on behalf of its customers. Substantial evidence supports these findings of fact. To the extent that the issue of whether the compensation was a commission or fee required a definition of that phrase, a question of law arises, which we review de novo. On that question, we conclude the hearing officer correctly interpreted the statute to include Rauscher's compensation for the mutual fund transactions at issue. The Court of Appeals correctly affirmed the hearing officer's determinations. *See* § 7–1–25(C).

{27} Rauscher argues in part that its mutual fund transactions are sales for purposes of Section 7–9–25 because Rauscher bears the risk of economic loss in the event that the customer defaults on his or her mutual fund purchase. In such a case, Rauscher must sell the shares back to the underwriter. If the shares have diminished in value since Rauscher purchased them, the argument continues, the loss is realized by Rauscher, not the underwriter. This argument is unpersuasive. As indicated above, the question of whether Rauscher is selling securities is not dispositive. If those sales generate a commission, the commission is subject to gross receipts taxation under the Act. *See* § 7–9–3(F)(1)(b); NMSA 1978, § 7–9–4 (1990).

{28} In reaching its determination that the "dealer concessions" were commissions or fees, the Court of Appeals considered the fact that Rauscher reported its mutual fund income as ordinary income, rather than capital gains. *Rauscher*, 2000–NMCA–065, ¶ 23, 129 N.M. 404, 9 P.3d 648. The Court of Appeals also considered the fact that the contracts Rauscher entered into with principal underwriters used the terms "dealer concession" and "commission" interchangeably.

---

1. "Reading Section 7–9–25 and Section 7–9–3(F) together, when one acts as an agent or broker for the sale of services, property or securities, only the commission or fee received for performing the service of acting as an agent or broker is subject to the gross receipts tax, and not the amount representing reimbursement from the customer for the property, service or security." *Protest of Rauscher, Pierce, Refsnes, Inc.*, No. 98–36 (N.M. Taxation and Revenue Dep't July 8, 1998) (decision and order).

*Id.* ¶ 24. We are not persuaded these facts are significant.

{29} Rauscher ably explains why the income derived from dealer concessions is reported as ordinary income: I.R.C. § 1236 (1994) prohibits the reporting of such income as capital gains. Broker-dealers must report revenue under Section 1236 from either a brokered transaction or a purchase and sale for profit as ordinary income. Federal tax law apparently does not distinguish in these circumstances between commissions and profits, so even if Rauscher's mutual fund transactions could properly be considered "sales," the income derived from them must be reported as ordinary income. We conclude Rauscher's compliance with that law does not provide a basis for determining its liability in this case.

{30} The interchangeable use of "dealer concession" and "commission" in Rauscher's contracts is also largely irrelevant. The term "commissions" as used in Section 7–9–3(F)(1)(b) must be given a meaning consistent with the purposes of the Act. We decline to hold that its appearance in (or absence from) a contract is determinative of how income derived from the contract ought to be treated. As the Court of Appeals notes in an earlier portion of the opinion, "[w]hether a transaction is taxed should not depend upon whether it is called a commission, discount or spread." *Rauscher*, 2000–NMCA–065, ¶ 21, 129 N.M. 404, 9 P.3d 648.

### 3.

{31} We conclude that the Court of Appeals was correct in affirming the hearing officer's decision. Rauscher acted as a broker in its mutual fund transactions. Moreover, although these transactions involve sales, they also involve the payment to Rauscher of a commission or fee. Consequently, the transactions are subject to taxation under Section 7–9–3(F)(1)(b) and 7–9–4.

{32} We take this opportunity to reject the Department's argument that the hearing officer was required to determine the "substance" of the transaction at issue. Whatever the merits of that argument on other facts or under other statutes, in this case we believe the ultimate goal is a determination of what the Legislature intended in enacting Section 7–9–3(F)(1)(b) and in particular whether Rauscher has shown its entitlement to the exemption provided in Section 7–9–25.

{33} The Legislature has provided a presumption that "all receipts of a person engaging in business are subject to the gross receipts tax." Section 7–9–5. We view the hearing officer's interpretation of the term "broker" and the Court of Appeals' affirmance of that interpretation in light of that presumption. Having considered and affirmed the hearing officer's determinations that Rauscher was acting as a "broker" in the relevant transaction and that the dealer concession was a "commission or fee" within the meaning of Section 7–9–3(F)(1)(b), we conclude that Rauscher has not shown its entitlement to the exemption provided in Section 7–9–25. For the reasons stated herein, we are not persuaded that the hearing officer erred in rejecting Rauscher's arguments. *See generally Security Escrow Corp. v. Taxation & Revenue Dep't*, 107 N.M. 540, 543, 760 P.2d 1306, 1309 (Ct.App. 1988) (noting that in claiming an exemption, the claimant "must show that his demand is within the letter as well as the spirit of the law").

### B.

{34} Rauscher argues that if its receipts are from the performance of services as a broker, those receipts are not taxable because the services were performed outside of New Mexico. Rauscher notes the hearing officer's finding that while a New Mexico customer's order is taken by an account executive in New Mexico, the order is then transmitted to Rauscher's home office. Rauscher contends that it is at this point that the activities by which Rauscher purchases and sells mutual fund shares occur.

{35} Rauscher reasons that because all of its activities after taking the order occur outside New Mexico, the hearing officer erred in determining that all of its receipts from the mutual fund transactions were receipts from performing services in New Mex-

ico. Rauscher's reliance on this finding is misplaced. Rauscher certainly affects the *purchase* of mutual fund shares outside of New Mexico. It is, however, the *sale* of these shares to New Mexico customers that is at issue. *See* § 7–9–3(F)(1)(b). As the Court of Appeals held, Rauscher is being compensated for "the sale or promotion of the sale of securities. These acts undisputably take place within New Mexico." *Rauscher,* 2000–NMCA–065, ¶ 31, 129 N.M. 404, 9 P.3d 648. We conclude Rauscher's argument has no merit.

### C.

{36} Rauscher also contends that the "predominant ingredient" test found in NMSA 1978, § 7–9–3(K) (2001), is applicable to this case. This test is applied when a transaction includes both the performance of services and the sale or lease of property to determine which of these constitutes the predominant ingredient of the transaction. *See Phillips Mercantile Co. v. New Mexico Taxation & Revenue Dep't,* 109 N.M. 487, 490, 786 P.2d 1221, 1224 (Ct.App.1990).

{37} Rauscher argues that the hearing officer found that ninety-five percent of its mutual fund transaction receipts are from the sale of the shares and the five percent representing the dealer concessions are from the performance of a service. From this, Rauscher contends that the predominant ingredient of its mutual fund transactions is the sale of securities rather than the performance of a service and that all of its receipts from those transactions are exempt from taxation under Section 7–9–25. The Court of Appeals rejected this contention, suggesting that because "the transactions were not true sales of securities for a profit, the predominant ingredient test" was not applicable. *Rauscher,* 2000–NMCA–065, ¶ 28, 129 N.M. 404, 9 P.3d 648.

{38} It is unclear to us whether the Court of Appeals intended to hold that Rauscher's transactions were not "sales" at all, or that Rauscher's sales of mutual fund shares generated commissions rather than "profit." To the extent that the Court of Appeals intended the former, we are unpersuaded. As discussed in section II(A)(2), above, Rausch-

er did sell securities, but was compensated for these sales with a commission. We nonetheless hold that Rauscher's reliance on the predominant ingredient test is misplaced.

{39} Rauscher is only liable for taxes on any commissions or fees it received as compensation for its mutual fund transactions. Rauscher purchased at a discount, sold the shares at full price, and retained the sum of the discount when it sold the shares. The hearing officer determined that sum was Rauscher's compensation for a sale and that it was a commission, which was taxable. We view the hearing officer's decision as having identified the predominant ingredient of the activities, if not the only ingredient, that gave rise to the discount as service and thus as having appropriately characterized Rauscher's role in the transactions. If we were to accept Rauscher's argument, Section 7–9–3(F)(1)(b) would become a nullity, because all brokered transactions that give rise to a commission surely would involve a sale for a sum that would exceed the commission earned. Rauscher's overall theory on appeal has been that Section 7–9–25, which provides an exemption for sales of securities, applies, rather than Section 7–9–3(F)(1)(b), which defines commissions or fees received by a broker with respect to the sale of securities as taxable gross receipts. Rauscher thus raises two legal issues. The first is whether the "dealer concessions" were commissions or fees. Second, it raises the legal issue of whether Rauscher was a broker. Once these issues were resolved, the appeal appears to be resolved by applying Section 7–9–3(F)(1)(b) as the more specific statute. *See Greene v. United States,* 79 F.3d 1348, 1355 (2d Cir.1996) ("When two statutes are in conflict, that statute which addresses the matter at issue in specific terms controls over a statute which addresses the issue in general terms, unless [the legislature] has manifested a contrary aim.").

{40} Having affirmed the hearing officer's characterization of Rauscher's discount as a mixed question of fact and law, we agree with the Court of Appeals that "the predominant ingredient test does not apply." *Rauscher,* 2000–NMCA–065, ¶ 28, 129 N.M. 404, 9 P.3d

648. This argument provides no basis for reversing the hearing officer.

## D.

{41} Rauscher finally argues that if this Court affirms the Court of Appeals, we should exercise our inherent power to apply the decision prospectively. As this argument was framed before the Court of Appeals, Rauscher challenged the definition of "broker" adopted by the hearing officer and affirmed by the Court of Appeals, arguing that the interpretation adopted was "so novel as to constitute rule making." *Rauscher,* 2000–NMCA–065, ¶ 27, 129 N.M. 404, 9 P.3d 648. We view the brief-in-chief as raising the same argument. We hold that prospective application is not appropriate for the following reasons.

{42} First, the hearing officer's decision in this case conforms to the general understanding of what constitutes adjudication rather than rule-making. *See generally Yesler Terrace Cmty. Council v. Cisneros,* 37 F.3d 442, 448 (9th Cir.1994) (rejecting a government agency's argument that its determination was an adjudication and holding that it was, rather, the promulgation of a substantive rule, invalid for lack of notice and an opportunity to comment). In *Yesler,* a majority of the panel noted:

> Two principal characteristics distinguish rulemaking from adjudication. First, adjudications resolve disputes among specific individuals in specific cases, whereas rulemaking affects the rights of broad classes of unspecified individuals. Second, because adjudications involve concrete disputes, they have an immediate effect on specific individuals (those involved in the dispute). Rulemaking, in contrast, is prospective, and has a definitive effect on individuals only after the rule subsequently is applied.

*Id.* (citations omitted).

{43} In the present case, the hearing officer was interpreting the Act and relevant regulations in an attempt to resolve the dispute between Rauscher and the Department. While the hearing officer's decision, as well as the opinion of the Court of Appeals, will affect parties other than Rauscher, the effect will be similar to the effect any judicial determination of a dispute between particular parties has on third parties. To the extent those parties are similarly situated, the determination in this case will be relevant precedent.

{44} We conclude that the hearing officer did not create a new administrative rule, and that the Court of Appeals did not err in rejecting Rauscher's argument for purely prospective application of its determination. The tasks the hearing officer was asked to perform were judicial in nature. Rauscher's protest raised factual and legal questions under existing law, which the hearing officer resolved by adopting an interpretation of the statutes that resolved these questions. We agree with the Court of Appeals that the principles governing the prospective application of administrative rules are not applicable.

## III.

{45} The hearing officer correctly determined that Rauscher's compensation for the mutual fund transactions it completed during the audit period was from commissions or fees under New Mexico law. That compensation, representing services provided in New Mexico, is therefore subject to gross receipts tax. The hearing officer's decision was not arbitrary, capricious, or an abuse of discretion; it was supported by substantial evidence in the record; and it was decided in accordance with the law. The Court of Appeals did not err in rejecting Rauscher's contention that the decision should be given prospective application, and we find no reason to give the opinion of the Court of Appeals prospective application. We therefore affirm the opinion of the Court of Appeals affirming the hearing officer's Decision and Order.

{46} **IT IS SO ORDERED.**

WE CONCUR: PATRICIO M. SERNA, C.J., JOSEPH F. BACA, GENE E. FRANCHINI, PETRA JIMINEZ MAES, JJ.