2005-NMCA-041

110 P.3d 76

**ELDORADO UTILITIES, INC.,**
Plaintiff–Appellant,

v.

**STATE of New Mexico ex rel. John D'ANTONIO, P.E., State Engineer,**
Defendant–Appellee.

No. 24,424.

Court of Appeals of New Mexico.

Feb. 23, 2005.

Certiorari Denied, No. 29,129,
April 12, 2005.

Peter B. Shoenfeld, Peter B. Shoenfeld, P.A., Santa Fe, NM, for Appellant.

DL Sanders, Chief Counsel, Randall W. Childress, Special Assistant Attorney General, Office of the State Engineer, Santa Fe, NM, for Appellee.

## OPINION

PICKARD, Judge.

{1} This case involves NMSA 1978, § 72–12–5 (1931), which provides that claimants of a vested water right from underground sources may file declarations of their claims with the State Engineer and further provides that such declarations are prima facie evidence of the claims. *See also* NMSA 1978, § 72–1–3 (1961) (providing for declarations of surface water rights in similar terms). The question we address in this case is whether there are any circumstances under which the State Engineer may refuse to file such declarations. We hold that the narrow facts of this case, which involved amended declarations and in which the records of the State Engineer indicated that the right claimed was not vested, provide one example of the limited circumstances in which the State Engineer has discretion to refuse to file declarations.

{2} Eldorado Utilities, Inc. (Eldorado), appeals from a judgment of the district court, which held that the State Engineer has discretion to refuse to accept its amended declarations of water rights. On appeal, Eldorado argues that (1) the State Engineer is statutorily mandated to accept the amended decla-

rations that Eldorado attempted to file; (2) the State Engineer, by not accepting the amended declarations, attempted to adjudicate Eldorado's water rights; and (3) the district court erred in finding facts that were not stipulated to by the parties. We hold that the State Engineer does have discretion to refuse to accept Eldorado's amended declarations. We also conclude that the State Engineer did not attempt to adjudicate Eldorado's water rights when the State Engineer refused to accept the amended declarations, and that there was substantial evidence to support the district court's findings of fact. Accordingly, we affirm.

## FACTS AND BACKGROUND

{3} This case concerns two wells owned by Eldorado. The wells were in various states of completion when, in 1970, the State Engineer extended the Rio Grande Underground Water Basin to cover the well sites. In March 1971, Eldorado filed declarations for the two wells, claiming 4.8 acre feet per year of water for each well, with a capacity of three gallons per minute. In July 1971, Eldorado filed amended declarations with the State Engineer that claimed that the two wells were not new wells, but had been in place since 1969. However, the amended declarations did not alter the original declarations' claim that the wells had a capacity of three gallons per minute, which allowed each well to divert 4.8 acre feet of water per year. The State Engineer accepted both the original and amended declarations. A disagreement between Eldorado and the State Engineer arose regarding the water rights associated with the two wells at issue, which led the State Engineer to bring suit against Eldorado. In December 1972, the Santa Fe District Court entered a judgment, which stated that Eldorado had the right to divert an amount of water equal to the capacity each well had on or before December 31, 1970, and to use water from the wells for domestic, municipal, industrial, recreational, and construction purposes. At the time the district court entered its judgment, the declaration on file was the amended declaration that had been filed in July 1971.

{4} Eldorado claims that in 1997 it discovered that certain facts reflected in the origi-

nal and amended declarations filed in 1971 were inaccurate. Eldorado claims that an inspection of the wells showed that the casing of the wells was actually more than two times larger than was declared in 1971, which allowed the wells to have a capacity of up to 150 gallons per minute. Subsequently, Eldorado attempted to file amended declarations for each well. The amended declarations claimed that the increased capacity of the wells allowed each well to beneficially use up to 242 acre feet of water per year. Furthermore, the amended declarations used different words to describe the uses to which the water would be put from that allowed by the 1972 judgment by declaring that the water would be used for subdivision and water utility purposes. The State Engineer refused to file the amended declarations. The State Engineer found that amended declarations were inconsistent with the original declarations filed in March 1971 and the amended declarations filed in July 1971. Furthermore, the State Engineer found that the amended declarations violated the district court's 1972 judgment.

{5} Eldorado requested a hearing before the State Engineer. Prior to the hearing, Eldorado filed a summary judgment motion in which Eldorado challenged the jurisdiction of the State Engineer to decline to receive amended declarations. Eldorado based its motion on Section 72-12-5, which states:

> Any person, firm or corporation claiming to be the owner of a vested water right from any of the underground sources in this act [72-12-1 to 72-12-10 NMSA 1978] described, by application of waters therefrom to beneficial use, may make and file in the office of the state engineer a declaration in a form to be prescribed by the state engineer setting forth the beneficial use to which said water has been applied, the date of first application to beneficial use, the continuity thereof, the location of the well and if such water has been used for irrigation purposes, the description of the land upon which such water has been so used and the name of the owner thereof. Such declaration shall be verified but if the declarant cannot verify the same of his own personal knowledge he may do so on information and belief. Such declarations

so filed shall be recorded at length in the office of the state engineer and may also be recorded in the office of the county clerk of the county wherein the well therein described is located. Such records or copies thereof officially certified shall be prima facie evidence of the truth of their contents.

Eldorado claims that, because the statute states that declarations "shall be recorded at length," the legislature has expressly limited the State Engineer's discretion in refusing to file declarations tendered pursuant to Section 72-12-5. After a hearing on the summary judgment motion was held, the State Engineer's hearing officers found that the State Engineer did have discretion to refuse to accept the amended declarations. Eldorado then filed an appeal with the Santa Fe district court.

{6} At the district court level, the State Engineer and Eldorado stipulated that the sole issue to be decided by the court was whether the State Engineer has the power or jurisdiction to refuse to receive the amended declarations that Eldorado attempted to file in 1997. Both parties also stipulated to the facts and exhibits that the district court could rely on in reaching its decision. After conducting a de novo review, the district court ruled that the State Engineer has the authority to refuse to accept Eldorado's amended declarations because Section 72-12-5 does not address the issue of amended declarations, and Eldorado's water rights are not vested rights. Furthermore, the court determined that the amended declarations are inconsistent with the 1971 declarations filed by Eldorado, which were relied on by the district court in issuing its judgment in 1972. Eldorado appeals from the district court's judgment.

## DISCUSSION

{7} We will begin by discussing whether the State Engineer has discretion to refuse to receive the amended declarations tendered by Eldorado. We will then proceed to analyze whether the State Engineer attempted to adjudicate Eldorado's water rights when the State Engineer refused to file the amended declarations. Finally, we will discuss

whether there was substantial evidence to support the district court's findings of fact.

**ISSUE ONE: The district court did not err when it determined that the State Engineer has the authority to refuse to accept Eldorado's amended declarations.**

{8} Eldorado asserts that the district court erred when it concluded that the State Engineer has the authority, as a matter of law, to refuse to accept Eldorado's amended declarations. Specifically, Eldorado challenges the district court's conclusion that Section 72-12-5 does not require the State Engineer to accept amended declarations. We review the question of whether the district court properly interpreted the applicable law de novo. *See Gallegos v. State Bd. of Educ.*, 1997-NMCA-040, ¶ 11, 123 N.M. 362, 940 P.2d 468 (holding that this Court is "not bound by the conclusions of law reached by the trial court, and the applicable standard of review for such issues is de novo").

■ {9} We begin our analysis by disputing the beguiling simplicity of Eldorado's argument concerning the purpose of the statute. Eldorado contends that the State Engineer has no discretion in any case to refuse to accept any original or amended declaration because the "intent of the statute is merely to provide a vehicle for water rights claimants to make their assertions of water rights known to the State Engineer," and it therefore "makes no sense for the State Engineer to be able to reject such knowledge." To be sure, apprising the State Engineer of claims is an obvious purpose of the statute. But the statute has another purpose and effect—that of making the declaration prima facie evidence of the claim. Because of the dual purposes and effects of the statute, we cannot rely solely on the knowledge aspect in deciding this case.

{10} We next turn to a discussion of whether Eldorado's water rights are vested rights. Our Courts have held that a water right becomes vested when the water is placed to beneficial use. *Cartwright v. Pub. Serv. Co. of N.M.*, 66 N.M. 64, 114, 343 P.2d 654, 689 (1958) (holding that "[n]o water right becomes vested until it has been applied to beneficial use to the full extent of its

right"), *overruled on other grounds by State ex rel. Martinez v. City of Las Vegas*, 2004-NMSC-009, ¶ 1, 135 N.M. 375, 89 P.3d 47; *State ex rel. Martinez v. McDermett*, 120 N.M. 327, 331-32, 901 P.2d 745, 749-50 (Ct. App.1995) (concluding that water rights cannot vest when water is not placed to beneficial use). In *State ex rel. Reynolds v. Mendenhall*, 68 N.M. 467, 362 P.2d 998 (1961), our Supreme Court reiterated the rule that a water right does not vest until water is placed to beneficial use. *Id.* at 470, 362 P.2d at 1001. The Court in *Mendenhall* held that "[t]he rights of an appropriator of water do not become absolute until the appropriation is completed by the actual application of the water to the use designed." *Id.* (internal quotation marks and citation omitted). In this case, Eldorado admitted below that the additional water claimed by the amended declarations had not been placed to beneficial use and does not claim to the contrary on appeal.

■ {11} What Eldorado does claim is that the concept of vesting by putting to beneficial use has nothing to do with the amount of water to which it claims a right. Eldorado relies on *State ex rel. Reynolds v. Rio Rancho Estates, Inc.*, 95 N.M. 560, 562-64, 624 P.2d 502, 504-06 (1981), which superficially supports its proposition. However, that case was decided in a different context, and we have frequently said that cases are not authority for propositions not considered. *See, e.g., Quality Chiropractic, PC v. Farmers Ins. Co.*, 2002-NMCA-080, ¶ 17, 132 N.M. 518, 51 P.3d 1172; *In re Estate of DeLara*, 2002-NMCA-004, ¶ 12, 131 N.M. 430, 38 P.3d 198. Moreover, we have recently reaffirmed the concept of beneficial use as being of critical importance in the law of water rights. *See Hanson v. Turney*, 2004-NMCA-069, ¶¶ 12-13, 136 N.M. 1, 94 P.3d 1. Thus, we rule that the right to additional water claimed within the amended declarations is not a vested right.

■ {12} Eldorado argues that even if we do not conclude that its water rights are vested, we should still hold that the State Engineer has no discretion to refuse to file the amended declarations because the State

Engineer has interpreted vested rights to mean any "existing water right." Eldorado cites to 19.27.1.8 NMAC (2001), in which the State Engineer has ruled that declarations of "existing water rights" may be filed pursuant to Section 72–12–5. Our Supreme Court has ruled that the legislature has granted the State Engineer "broad powers to implement and enforce the water laws administered by him." *State ex rel. Reynolds v. Aamodt,* 111 N.M. 4, 5, 800 P.2d 1061, 1062 (1990). Here, Section 72–12–5 statutorily mandates the State Engineer to accept and file declarations that claim water rights that are vested. But the statute goes further and requires the declaration to contain information about the water's application to beneficial use. The statute does not expressly preclude the State Engineer from filing declarations of water rights that he has reason to believe, from the information in his own files, are not vested. Yet, due to the broad power granted to the State Engineer by the legislature, and the legislature's silence regarding the filing of declarations of water rights that are not vested, we hold that the State Engineer has the discretion to file or not file declarations claiming non-vested water rights.

▪ {13} That discretion, however, is not an unbridled or free-ranging discretion by any means. Instead, that discretion must be based on some knowledge that the State Engineer possesses concerning whether the rights shown by the declaration are vested. In this case, the State Engineer's own records gave him a sufficient basis of knowledge from which to conclude, for the purpose of declining to file the amended declarations, that the rights asserted therein were not vested, as contemplated by Section 72–12–5.

{14} Our review of the record also leads us to conclude that records of the State Engineer showed that the amended declarations conflict with the 1972 judgment, which both parties agree is binding and which was part of the State Engineer's records. The district court's judgment in 1972 specifically held that water from the wells could be used for "domestic, municipal, industrial, recreational, and construction purposes." The amended declarations claim a right to use the water for subdivision and water utility purposes, which are not the same words used in the 1972 judgment and therefore raise the possibility that the water is intended to be used for purposes not allowed for in the 1972 judgment. Although we do not decide whether subdivision and utility purposes are the same as domestic, municipal, and construction purposes, we note that it was Eldorado who filed the declaration using the different terminology.

{15} Additionally, the amended declarations attempt to increase the water right of Eldorado from 4.8 acre feet per year, which is the water right claimed in the declarations filed in 1971, to up to 242 acre feet per year. Eldorado claims that the 1972 judgment does not limit the water rights to the amount Eldorado had claimed in the declarations filed in 1971. Eldorado correctly asserts that the judgment states that Eldorado may divert water to the capacity each well had on or before December 31, 1970. Yet, the 1972 court expressly stated that it relied upon the facts alleged and admitted in the pleadings in reaching its judgment, and one such admission was made by Eldorado when it answered:

> Before December 31, 1970, Defendant had either completed or substantially initiated construction upon eighty four (84) of the aforesaid wells, thereby entitling it to either divert waters of the Rio Grande Underground Water Basin by means of said wells or to complete the construction of said wells by deepening and enlarging them and then divert the waters of the Rio Grande [Underground] Water Basin by means thereof *to the extent of their capacities as declared.*

(Emphasis added.) To the extent that Eldorado contends that this fact in its own pleading was not a fact "alleged and admitted" because it was simply alleged by Eldorado and not admitted by the State Engineer, who filed no responsive pleading to it, we believe that Eldorado is relying on technicalities. Eldorado's own assertions in 1972 are judicial admissions, at least for the purpose of allowing the State Engineer to preliminarily rely on them in order to refuse to file the 1997 amended declaration. *S. Union Exploration Co. v. Wynn Exploration Co.,* 95 N.M.

594, 598, 624 P.2d 536, 540 (Ct.App.1981) (indicating that an admission in a pleading is sufficient to support a finding, but is not conclusive and is subject to being considered together with other evidence). At the time of the 1972 case, the capacities declared by the declarations were three gallons per minute. Eldorado's 1997 amended declarations increased the claimed capacity to up to 150 gallons per minute. Thus, we conclude that the 1972 judgment was a fact that the State Engineer could consider in determining whether to file the 1997 amended declarations that conflict with that judgment.

{16} Finally, we note that Eldorado was offered the opportunity for an evidentiary hearing, both before the State Engineer and before the district court on appeal. These hearings would have provided an opportunity for Eldorado to challenge the facts in the State Engineer's records upon which he relied to make a preliminary determination that the rights contained in the amended declaration were not vested such as was required to give the State Engineer a mandatory duty to file the amended declarations. Instead, Eldorado filed a motion challenging jurisdiction before the State Engineer and appealed from that decision, foregoing any hearing, and then agreed to have the district court decide the legal question solely, contending that the State Engineer had to file its amended declarations.

{17} For all the foregoing reasons, we hold that the district court did not err in determining that the State Engineer had discretion to refuse to accept Eldorado's amended declarations because those declarations conflicted with the records on file with the State Engineer, particularly the records surrounding the 1972 judgment, which showed that the claimed water rights were not vested, which is a requirement of Section 72–12–5.

**ISSUE TWO: The State Engineer did not attempt to adjudicate Eldorado's water rights when he refused to accept the amended declarations.**

{18} Eldorado argues that the State Engineer declined to accept the amended declarations only to prevent Eldorado from declaring an increased amount of water, which is an attempt on the part of the State Engineer to adjudicate Eldorado's water rights. Eldorado argues that the State Engineer has no right to adjudicate water rights and directs our attention to *State ex rel. Reynolds v. Lewis,* 84 N.M. 768, 772, 508 P.2d 577, 581 (1973), in which our Supreme Court has held that the adjudication of water rights is an exclusively judicial function. We agree that only courts have the power and authority to adjudicate water rights. Yet, we disagree with Eldorado's assertion that the State Engineer's refusal to accept the amended declarations was an adjudication of Eldorado's water rights.

{19} Adjudications of water rights are governed by several statutory sections, among which are those that require hydrographic surveys and that all claimants of waters in the stream system be made parties, NMSA 1978, § 72–4–17 (1965), and that require adjudicatory decrees, containing detailed information about the rights adjudicated, NMSA 1978, § 72–4–19 (1907). In this case, no such procedures were followed.

{20} Yet, Eldorado contends that the effect of the State Engineer's actions was tantamount to an adjudication because they took from Eldorado the right to the prima facie proof aspect of Section 72–12–5. Be that as it may, the State Engineer had two legitimate reasons, as discussed above, to refuse to accept the amended declarations— because the declarations conflicted with the 1972 judgment that is binding on both parties, and because the amended declarations covered rights that were not vested. Declarations are only prima facie proof until they are rebutted. *See State ex rel. Martinez v. Lewis,* 118 N.M. 446, 449, 882 P.2d 37, 40 (Ct.App.1994). When the State Engineer's own records contain information rebutting what appear to be outlandish claims, we do not believe that the State Engineer is required to file declarations containing those claims. The fact that a later adjudication might take a different course does not mean that the State Engineer has adjudicated any water rights. He has simply utilized his regulatory power to disallow the filing of amended declarations that conflicted with the judgment and statute. Therefore, we hold

that the State Engineer did not attempt to adjudicate Eldorado's water rights when he refused to file the amended declarations.

**ISSUE THREE: The district court only entered findings of facts that were based on stipulated facts and exhibits and the findings of facts were supported by substantial evidence.**

{21} Eldorado argues that the district court erred when it made findings of facts that were not stipulated to by the parties. Eldorado claims that since no evidence was entered at the hearing before the State Engineer or at the district court, the court could only find facts that were stipulated to by the parties. Yet, both parties also agreed to allow the district court to consider three exhibits, which were (1) the entire file from the 1972 proceeding, (2) a letter to Eldorado from Paul Saavedra, Chief of the Water Rights Division of the Office of the State Engineer, and (3) the record of the Water Rights Division on file with the district court. Eldorado claims that the district court's findings of fact that were not stipulated to by the parties are not supported by substantial evidence. Thus, we will review the district court's findings of fact to determine if those findings could have been made based on the stipulated facts and exhibits that the parties agreed to submit to the court and whether those findings are supported by substantial evidence. *Rauscher, Pierce, Refsnes, Inc. v. Tax & Rev. Dep't,* 2002–NMSC–013, ¶ 26, 132 N.M. 226, 46 P.3d 687.

{22} Here, findings number eight, nine, and ten, arise from the file of the 1972 proceedings. Finding number eight is an an-swer that was given by Eldorado during the 1972 proceedings, finding number nine is a list of facts that Eldorado stipulated to in that case, and finding number ten is the order from 1972 regarding the water rights associated with the wells. Finding number twelve is based on a letter sent to Eldorado by Paul Saavedra, Chief of the Water Rights Division for the State Engineer. Thus, we hold that the district court did not enter findings of fact that went beyond the stipulated facts and exhibits, which the parties agreed that the court could consider. We also conclude, therefore, that the district court's findings were supported by substantial evidence. *Landavazo v. Sanchez,* 111 N.M. 137, 138, 802 P.2d 1283, 1284 (1990) (holding that substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion); *Alexander v. Anderson,* 1999–NMCA–021, ¶ 23, 126 N.M. 632, 973 P.2d 884 (stating that the whole record is considered).

**CONCLUSION**

{23} For the foregoing reasons, we affirm the district court's judgment.

{24} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE, Chief Judge, and MICHAEL E. VIGIL, Judge.